Balch v. Glenn.

S. W. BALCH, *Appellant,* v. A. P. GLENN *et al.,* *Appellees.*

No. 17,226.

SYLLABUS BY THE COURT.

1. STATUTES — *Creating Entomological Commission — Constitutional.* The statute creating the entomological commission and providing for the extermination of San José scale and other orchard pests (Gen. Stat. 1909, §§ 8727-8739) is a valid exercise of the police power.

2. —————— *Same.* The statute is not invalid because it delegates to the commission the power to declare the existence of conditions which call into operation the provisions of the statute.

3. —————— *Same.* The legislature of the state may declare that to be a nuisance which is detrimental to the health, morals, peace or welfare of its citizens, and may confer power upon local boards or tribunals to exercise the police power of the state when in the judgment of such tribunals the conditions exist which the legislature has declared constitute such nuisance.

4. —————— *Same.* Nor is the statute in question unconstitutional

on the ground that it provides for taking private property without due process of law. It rests wholly with the legislature whether, in the exercise of its power of police regulation, the individual whose property is destroyed shall receive compensation·therefor.

5. —————— *Same.* The statute is designed to protect and promote the horticultural interests of the state and, in effect, makes all orchards, trees, shrubs and plants infested with the pests mentioned in the statute public nuisances, and being a proper exercise of the police power is not unconstitutional because it authorizes the expense of abating such nuisance to be charged against the property of the owner.

6. —————— *Same.* Nor is the statute unconstitutional because no separate tribunal is provided by which the owner may contest the amount of expense which shall be charged against his property. The act requires notice to be served upon the owner stating the amount of expense incurred by the commission and notifying him that unless such expense be paid within twenty days the same will be taxed against his property. *Held,* that, ample notice being provided which gives the property owner an opportunity to question the amount of such expense in an action in any court of competent jurisdiction before his property is affected, he is afforded due process of law.

7. —————— *Abating Nuisance — Expenses—Lien—Constitutional.* The lien given by the statute upon premises for the expense of abating such nuisance thereon is not for a delinquent tax but for an indebtedness due the county, and the provision authorizing such expense to be collected as other taxes are collected is not obnoxious to any constitutional inhibition.

Appeal from Sedgwick district court. Opinion filed November 11, 1911. Affirmed.

*John W. Adams,* and *George W. Adams,* for the appellant.

*John S. Dawson,* attorney-general, *Earl Blake,* and *W. A. Ayres,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: In this suit the appellant challenges the validity of chapter 386 of the Laws of 1907, as amended by chapter 27 of the Laws of 1909 (Gen. Stat. 1909,

Balch v. Glenn.

§§ 8727-8739), creating the entomological commission
and providing for the extermination of San José scale.
Appellant is the owner of a large orchard of apple and
peach trees, grapes and other fruit, and sued to enjoin
the defendants from entering upon his premises for
the purpose of inspecting, spraying and destroying
the fruit trees and vines, and from causing the expenses
incurred in the performance of such services to be
taxed against his property. In their answer appellees
admitted that they were about to inspect, and, if neces-
sary, destroy the trees, vines and other shrubbery on
appellant's premises, and that the costs and expenses
incurred by them would be taxed against his property;
they alleged that appellant's orchard is infected with
San José scale, and asked that he be enjoined from in-
terfering in any manner with the work of the commis-
sion in exterminating the same. On the trial the court
found the acts of the appellees justified, and enjoined
appellant from interfering with the proceedings. From
this judgment he appeals.

Chapter 386 of the Laws of 1907 creates the ento-
mological commission, to consist of the secretary of the
State Board of Agriculture, the secretary of the Kansas
State Horticultural Society, the professor of ento-
mology of the University of Kansas, the professor of
entomology at the State Agricultural College, and a
nurseryman actively engaged in the nursery business
within the state, to be appointed by the governor. The
purpose of the act is the suppression and extermination
of San José scale and other injurious insect pests and
plant diseases. In order to accomplish such purpose
the entomologists, their assistants and employees, are
authorized to enter upon the premises of any private
individual and inspect, destroy, treat or experiment
upon such insects or plant diseases. In case the offi-
cers mentioned or their employees shall find such in-
sects or diseases to exist, they are required to mark in
some conspicuous way all trees, vines, shrubs or plants

47—85 KAN.

so infested, and to give notice in writing to the owner, tenant, or person in charge of the premises, of the condition thereof. The act then provides that if the owner or person in charge shall not within ten days thereafter destroy or treat the same in accordance with the regulations and rules of the commission, the commission shall cause the work to be done. The act of 1907 provided that the expenses of such extermination or treatment, properly certified by the commission, should be collected by the county attorney of the county where such premises are located, who was directed to account therefor to the commission. The legislature of 1909 amended the act so as to provide that the expense incurred in inspecting, treating and exterminating such insect pests should be paid by the owner of the premises within a certain time after the services were performed, in default of which it should be taxed against the property and collected in the same manner as delinquent taxes. The amendment, so far as it relates to the present controversy, reads as follows:

"The necessary expense thereof shall be paid by the owner or owners of the real estate from which said infestation has been removed in pursuance of this act. The state entomologist or his deputy shall serve or cause to be served upon said owner or any one in possession and in charge of said real estate, a notice, stating the amount of said charge, and further stating that if said charge be not paid to the county treasurer of the county wherein said real estate is located within twenty days from the date of the service of said notice, that the same will become a lien upon said real estate. Copy of said notice, together with the proof of service, shall be at once filed with the county clerk, and if said amount is not paid within the time therein stated, said county clerk shall spread the same upon the tax roll prepared by him and said amount shall become a lien against said real estate and be collected as other taxes are collected, and said real estate shall be sold for nonpayment of said taxes the same as now or hereafter may be provided by law for sale of real estate for delinquent taxes. Should the owner of said real

estate not pay said charges within the stated time, the same shall be presented to the board of county commissioners by the county clerk and by them allowed and paid out of the general fund of said county by the county treasurer, and when said amount is collected as taxes it shall be paid into the general fund of said county. The cost of eradication or treatment of such infestation, as above stated, shall be paid to the county treasurer, to whom the county clerk shall certify all amounts due as reported to him by the entomologist in charge. The county treasurer shall forward to the state treasurer on the first of each month all amounts thus received. These amounts shall be paid into the general fund of the entomological commission." (Laws 1909, ch. 27, § 1, Gen. Stat. 1909, § 8732.)

There was ample evidence to warrant the finding that appellant's orchard is infested with San José scale. It is conceded that the appellees were attempting to follow the provisions of the statute. They and their employees had gone upon the premises of the appellant and had marked certain trees and shrubs for destruction, and had marked others for treatment by spraying; they had given the appellant due notice in writing, ordering him within ten days thereafter to treat and destroy the pest under the rules and regulations of the commission. Upon his failure to comply with the order, the commission was about to cause the work to be done and the expense thereof charged against appellant's property.

The appellant asserts that the act of 1907, as amended by that of 1909, is unconstitutional. Generally stated, his contentions are: that the law deprives him of his property without due process of law, and therefore violates the fourteenth amendment to the federal constitution; that it deprives him of the right to a jury trial, in violation of section 5 of the bill of rights; that it attempts to confer judicial power upon the commission and its employees, and to give them authority to determine the amount of taxes which shall be assessed against the appellant's property, without notice or opportunity to contest the amount thereof; that it

violates section 1 of article 11 of the constitution of Kansas requiring a uniform and equal rate of assessment and taxation. Little if any attempt is made in the brief to argue these propositions separately; but counsel for appellant urge the following specific objections to the statute: (1) That there is no method of procedure or hearing provided by which appellant's right to protest against the destruction of his property is preserved; that the law delegates to the commission and its employees the power to mark trees for destruction without a hearing or trial as to the necessity thereof; (2) that it fails to prescribe any compensation for property destroyed, whether taken rightfully or wrongfully; (3) that no notice or opportunity is provided by which the appellant may contest the amount of the expenses which shall be taxed against his property. Most of these objections rest upon what appears to be a failure to distinguish between the exercise of the power of eminent domain and the exercise of the power of police regulation. Many cases are cited where legislative enactments have been held invalid on the ground that they provide for taking private property for public use without compensation. These authorities have no application to the present case. The courts have universally recognized the distinction between the two powers. Under the exercise of the one, private property can not be taken either for public or private use without compensation; in the exercise of the other, the use of property may be limited, or controlled, or the property itself destroyed, without any compensation therefor being made to the owner. It is no objection to the validity of laws passed in the proper and lawful exercise of the police power that provision is not made for compensation to the individual whose property may be affected thereby. Property taken or destroyed for the purpose of abating a nuisance or to prevent the spreading of a pestilence is not taken for public use. All private property is held subject to such reasonable

Balch v. Glenn.

restraints and burdens as in the opinion of the legisla-
ture will secure and maintain the general welfare and
prosperity of the state.  It is held subject to the obliga-
tion that it shall not be used so as to affect injuriously
the rights of the community.  It belongs to the legisla-
tive branch of the government "to exert what are
known as the police powers of the state, and to deter-
mine, primarily, what measures are appropriate or
needful for the protection of the public morals, the pub-
lic health, or the public safety."  (*Mugler v. Kansas,*
123 U. S. 623, 661, 31 L. Ed. 205; *Mo. Pac. Rly. Co. v.
Finley,* 38 Kan. 550, 16 Pac. 951.)

In the exercise of this power the legislature may be
justified in excluding property dangerous to the prop-
erty of citizens of the state, as, for example, animals
having infectious or contagious diseases.  The police
power is said to be inherent in government, but can
only be exercised by authority of legislative enactment.
It is for the legislature to determine what laws are
needful and appropriate to promote the public welfare
and to prevent the infliction of public injury.  So long
as the legislature, in attempting to exercise this power,
does not violate any of the provisions of the organic
law or encroach upon some power vested in congress
by the federal constitution, the exercise of its dis-
cretion is not subject to review by the courts.  (*Matter
of Application of Jacobs,* 98 N. Y. 98, 50 Am. Rep.
636.)  In the language of Justice Gray, in *Blair &
Hutchinson & Smith v. Forehand,* 100 Mass. 136:

"All rights of property are held subject to such
reasonable control and regulation of the mode of keep-
ing and use as the legislature, under the police power
vested in them by the constitution of the commonwealth,
may think necessary for the preventing of injuries
to the rights of others and the security of the public
health and welfare.  In the exercise of this power, the
legislature may not only provide that certain kinds of
property (either absolutely, or when held in such a
manner or under such circumstances as to be injurious,
dangerous or noxious) may be seized and confiscated

upon legal process after notice and hearing; but may also, when necessary to insure public safety, authorize them to be summarily destroyed by the municipal authorities without previous notice to the owner—as in the familiar cases of pulling down buildings to prevent the spreading of a conflagration or the impending fall of the buildings themselves, throwing overboard decaying or infected food, or abating other nuisances dangerous to health." (p. 139.)

It cannot be doubted that the legislature possessed the power to declare that the existence of San José scale, which is well known to be injurious and dangerous to the fruit industry of the state, constitutes a nuisance. The evidence in the case at bar shows beyond question that this particular pest is so prevalent in Sedgwick county as to become a source of great danger to the fruit growers in the community, as well as to those in other sections of the state. The statute, viewed in the light of the evidence and aided by facts which common experience and observance teach respecting the danger to an important industry of the state from the presence of insect pests, must be regarded as appropriate and well calculated to accomplish the purpose of the legislature, and therefore a proper exercise of the police power. Similar laws have been upheld in other states. Thus, in *County of Los Angeles v. Spencer*, 126 Cal. 670, 59 Pac. 202, 77 Am. St. Rep. 217, it was said:

"It is known that the existence of the fruit industry in the state depends upon the suppression and destruction of the pest mentioned in the statute. The act in question is, therefore, a proper exercise of the police power which the legislature has, under section 1 of article 19 of the constitution, to subject private property to such reasonable restraints and burdens as will secure and maintain the general welfare and prosperity of the state. *Abeel v. Clark*, 84 Cal. 226; *Train v. Boston Disinfecting Co.*, 144 Mass. 523, 59 Am. Rep. 113." (p. 673.)

The law in question here is of the same character as are the quarantine laws pertaining to Texas cattle

Balch v. Glenn.

and splenic fever, which the legislature has enacted for the purpose of preventing the infection of cattle and other live stock. It falls within the miscellaneous cases referred to by Judge Cooley in his Constitutional Limitations, as follows:

"And there are other cases where it becomes necessary for the public authorities to interfere with the control of individuals of their property, and even to destroy it, where the owners themselves have fully observed all their duties to their fellows and to the state, but where, nevertheless, some controlling public necessity demands the interference or destruction. A strong instance of this description is where it becomes necessary to take, use, or destroy the private property of individuals to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public calamity. Here the individual is in no degree in fault, but his interest must yield to that 'necessity' which 'knows no law.'" (Cooley, Const. Limitations, 7th ed., p. 878.)

Cases sometimes arise where the exigencies of the situation require private property to be destroyed immediately in order to prevent the spread of pestilence or some other calamity, and where, under all the circumstances, the loss which the individual suffers is so inconsiderable in comparison with the benefit to the public that in the opinion of the legislature he is regarded as fully compensated by his individual share in the benefit accruing to the public. Other cases will arise where it is apparent that if no action is taken by the state the property of the individual will be destroyed or rendered of little or no value. In *Shafford v. Brown*, 49 Wash. 307, 95 Pac. 270, the supreme court of Washington had under consideration a statute giving power to a county fruit inspector to destroy fruit infected with insects, and held that the owner of such fruit had no cause of action against the inspector for damages for its destruction for the reason that it had no value.

It is true that in some of the laws providing for the

abatement of nuisances the legislature has made pro-
vision for compensation to the individual for the loss
of his property where it has been destroyed. Thus the
statute authorizing the live-stock sanitary commis-
sioner, when in his opinion it shall be necessary to
prevent the spread of any contagious or infectious dis-
ease among the live stock of this state, to destroy ani-
mals with, or which may have been exposed to, certain
diseases, provides that he shall first cause the animals
to be appraised (Laws 1905, ch. 495, § 7, Gen. Stat.
1909, § 9138), and the owner is to be paid the value as
fixed by the appraisement; but the statute expressly
provides that this right of indemnity for such loss shall
not extend to cases where such animals have been
brought into the state in a diseased condition or from
an infected district or state or brought into the state
in violation of any law or quarantine regulation, or to
cases where the owner has violated the quarantine law
or disregarded any regulation of the live-stock sanitary
commissioner, nor to any case where the animal came
into the possession of the claimant with knowledge
that it was diseased or had been exposed to contagion
(Laws 1905, ch. 495, § 12, Gen. Stat. 1909, § 9143).
The same statute (Laws 1905, ch. 495, § 8, Gen. Stat.
1909, § 9139) provides that in fixing the value of any
such animal the commissioner shall be governed by the
value thereof at the date of the appraisement, so that
the state does not undertake to compensate the owner
for any loss occasioned by the disease or infection. And
for some reason which the legislature deemed sufficient
it is further provided in the same section as follows:
"That no animal or animals shall be appraised except
those affected with contagious pleuro-pneumonia of
cattle or foot-and-mouth disease, or such as have been
exposed thereto." The legislature acted upon the
theory that in the exercise of the police power for the
purpose of affording protection to the live stock in-
dustry of the state it might authorize the destruction of

Balch v. Glenn.

private property, making provision in some cases for full compensation to the owner thereof, in other cases for partial compensation, and in still others for no compensation. The act for the protection of domestic animals is not before us and its constitutionality is therefore not in question. Its validity, however, has not, so far as we are aware, been attacked upon any of the grounds urged against the statute now under consideration.

In 1883 the legislature enacted a law providing for the appointment of sheep inspectors and prescribing their duties. (Laws 1883, ch. 144, Gen. Stat. 1909, §§ 9094-9100.) The act, which seems never to have been assailed as invalid, authorizes such inspectors to order the owner of sheep afflicted with certain diseases to cause the same to be dipped or otherwise treated, and when the owner fails to comply with such order he is subject to a fine which is made a lien upon the sheep. There is a further provision that the inspector shall then cause the sheep to be treated and the costs and expenses shall be charged against the sheep and made a lien thereon, which shall be collected in any court of competent jurisdiction.

A similar act was passed by the legislature of 1909 for the suppression of tuberculosis in cattle, which authorizes the owner of any animals found to be so infected to deliver them to the live-stock sanitary commissioner and to receive from him an order on the board of county commissioners of the county in which the diseased animals are located for fifty per cent of the appraised value of such animals as if they had not been diseased, provided that no county shall recognize such order unless such animals have been owned in the county at least 120 days prior to the time the tuberculin test was administered to them. (Laws 1909, ch. 169, Gen. Stat. 1909, §§ 9164-9171.)

It rests wholly with the legislature to determine whether in the exercise of its power of police regu-

lation the individual whose property is destroyed shall receive compensation therefor. In the statute of which .appellant complains no such provision appears. Doubtless the legislature considered, what is most obvious, ·that no serious hardship is likely to result.to the owner of property through the enforcement of its provisions. No tree or shrub is to be destroyed until upon in-.spection it is found to be so seriously infested with insect pests as to be of no practical value. On the other hand, if its condition is found to be such that it· ·can be preserved by spraying or other treatment, and the owner, after due notice thereof, refuses to give it proper treatment, the state steps in and for the purpose of preventing the spread of the infestation administers the necessary treatment and frequently preserves the property from ultimate destruction. The · owner, by being compelled to pay the necessary expense incurred in the treatment and preservation of his property, is required to pay only what is justly due the state.

There is no force in the objection that the statute is repugnant to the fourteenth amendment. That clause of the federal constitution does not limit the subjects upon which the police power of the state may be exerted, .nor was it designed to interfere with the power of the state to enact laws for the preservation of the health, morals, peace, or welfare of the people. (*Mugler v. Kansas*, 123 U. S. 623, 31 L. Ed. 205; *Minneapolis Railway Co. v. Beckwith*, 129 U. S. 26, 32 L. Ed. 585; *Prohibitory Amendment Cases*, 24 Kan. 700.)

In *Mugler v..Kansas*, supra, it was contended that the state, by prohibiting, in its constitution and laws, . the manufacture or sale of intoxicating liquors for general use as a beverage, deprived the citizen of his .property in violation of the fourteenth amendment. ˙The court held that a prohibition simply upon the use · of property for purposes declared by the legislature to ˙be injurious to the health, morals, or safety of the

community "can not, in any just sense, be deemed a taking or an appropriation of property for the public benefit" (p. 668), for the reason that the owner is not disturbed in the control or use of his property for lawful purposes nor restricted in his right to dispose of it, but its use is forbidden only for certain purposes prejudicial to the public interests. The court, however, went much further and held that "the destruction, in the exercise of the police power of the state of property used, in violation of law, in maintaining a public nuisance, is not a taking of property for public use, and does not deprive the owner of it without due process of law." (Syl.) Upon this proposition the late Justice Harlan, in the opinion, used this language:

"Nor can legislation of that character come within the fourteenth amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his liberty and property, without due process of law. The power which the states have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, can not be—burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent holder." (123 U. S. 669.)

The statute is not invalid because it delegates to the commission the power to declare the existence of conditions which call into operation the provisions of the statute. The legislature of the state may declare that

to be a nuisance which is detrimental to the health, morals, peace, or welfare of its citizens, and may confer power upon local boards or tribunals to exercise the police power of the state when in the judgment of such tribunals the conditions exist which the legislature has declared constitute such nuisance. Similar power has been conferred upon cities of the first class to remove certain nuisances, and to tax the costs of the proceedings upon the property where the nuisances are located. (Laws 1905, ch. 109, § 1, Gen. Stat. 1909, § 918.) Like authority is conferred upon the live-stock sanitary commissioner to determine that domestic cattle or live stock are infested with certain contagious diseases. (Laws 1905, ch. 495, § 5, Gen. Stat. 1909, § 9136.)

"The legislature of the state may declare that a nuisance, which is such in fact, and may create a commission with power to determine whether the conditions defined by the act exist." (Cooley, Const. Limitations, 7th ed., p. 882, note 1.)

In determining whether the conditions exist which the legislature declares constitute a nuisance, that is, whether a particular orchard, or some portion thereof, is so infested with insect pests as to require treatment or extermination, the commission exercises some discretion which is in a limited sense judicial, but no more so than the discretion generally exercised in the enforcement of police regulations. It is like the discretion exercised by inspectors of health, food, grain, milk, live stock, by the various state boards and commissions, and by city officers charged with the enforcement of police regulations, which, in order to be effective, often require prompt and summary execution, and which from their nature call for the exercise of more or less discretion in the officers whose duty it is to make them effective.

The same objection was urged against the act creating the board of railroad commissioners and acts supplementary thereto. It was held that although the

Balch v. Glenn.

board is required to exercise judgment and discretion and to make orders for the regulation and control of railroads and other common carriers, the act does not confer upon the board either executive or judicial powers. (*The State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606.) To the same effect is *Schaake v. Dolley*, ante, p. 598, 118 Pac. 80, where it was held that the granting or refusing of an application for a bank charter by the charter board calls for the exercise of discretion, and that the act creating the board is not invalid because it provides that the board shall refuse a bank charter if upon examination it shall determine against the public necessity of the business in the community in which it is sought to establish such bank. The statutes construed in both of the foregoing cases were passed by the legislature under the police power of the state. The precise question was before the supreme court of California in *County of Los Angeles v. Spencer*, 126 Cal. 670, 59 Pac. 202, 77 Am. St. Rep. 217, where a statute almost identical with this was construed, and it was held that:

"A statute designed to protect and promote the horticultural interests of the state, which declares that all places, orchards, etc., infected with the pests mentioned in the statute are public nuisances, and which act is a proper exercise of the police power, is not unconstitutional on the ground that it confers judicial powers upon the horticultural commissioners, where a commissioner, in determining whether any particular place is a nuisance, must necessarily exercise some discretion which, in a strict sense, is judicial in its nature." (77 Am. St. Rep., headnote.)

Nor is the act invalid because no procedure or method is provided by which the owner may contest the necessity for the destruction of his property. The exigencies of the situation and the conditions which the legislature had in mind require prompt and summary action. The fruit industry of a large portion of the state might be jeopardized by delays resulting from

almost any method or procedure which could be devised by which the owner could have a hearing as to the necessity for the destruction of his property. If his orchard is infested with the dangerous pests which the statute was designed to exterminate, the legislature declares the condition to constitute a nuisance which the interests of the state require shall be abated promptly and summarily. In order that private property might not be liable to destruction under the provisions of the statute, except where the conditions actually exist, the legislature provided that the commission shall be composed of persons possessing a scientific and practical knowledge of horticulture. And when those persons have determined that an orchard, or some portion of it, is infested with such insect pests it would seem that the question is one about which there could be little room for reasonable minds to differ. Under the police power the legislature may, when necessary, authorize the seizure and confiscation or destruction of private property without previous notice to the owner. (*Blair & Hutchinson & Smith v. Forehand,* 100 Mass. 136.)

It is urged that the act is unconstitutional because it authorizes the cost of the proceeding to be charged against the property of the owner without notice to him or opportunity to question the amount thereof. The act, however, requires notice in writing to be served upon the owner, stating the amount of expense incurred by the commission and notifying him that unless the same be paid within twenty days the same will be taxed against his property. He therefore has notice before any lien is created upon his property, and before it can be taken or sold. Having this notice, he is relegated to his common-law remedies. If he believes the amount charged is greater than it should be, he has ample time to determine what is the proper charge, tender the same to the county clerk, and enjoin in any court of competent jurisdiction the collection of a greater amount. It has been held by the supreme court of the

United States that the phrase "due process of law" does not necessarily mean a judicial proceeding. (*McMillen v. Anderson,* 95 U. S. 37, 41.) On the other hand, it does not necessarily mean a special tribunal created for the express purpose of hearing the merits of the particular controversy. Where ample notice is provided which gives to the property owner an opportunity to have a hearing in any court of competent jurisdiction before his property is affected he is afforded due process of law.

But we do not regard the cost of the proceedings as a tax, although the act refers to it as a tax to "be collected as other taxes are collected." It is merely the expense of abating a nuisance, and there are various ways which the legislature might have adopted for its collection. They might have provided for its collection by an action against the owner, after his neglect or refusal, upon due notice, to abate the nuisance, following the method provided for collecting the cost and expenses of inspecting and treating diseased sheep (Laws 1883, ch. 144, § 4, Gen. Stat. 1909, § 9097) ; or, the method prescribed where infected cattle are taken by order of the live-stock sanitary commissioner under section 9136 of the General Statutes of 1909, which provides that all the costs and expenses of taking, holding and caring for such animals shall be paid by the owner, and if not so paid, the animals shall be advertised and sold in the same manner as personal property on execution.

Instead of adopting either of these methods the legislature provided that the cost of abating the nuisance should be paid by the owner of the property, and in default of such payment the board of county commissioners should pay it, so that the work of the commission should not be delayed; and then gave the county a lien upon the real estate for the indebtedness due it from the owner and authorized the county to enforce such lien by the method employed in the levying and collect--

ing of taxes.   The California statute gives to the county a lien upon the real estate for the expenses incurred and provides for its enforcement by an ordinary action.   It was held that the lien is not for a delinquent tax but merely for an indebtedness due to the county. (*County of Los Angeles v. Spencer*, 126 Cal. 670, 59 Pac. 202.)

Since the expense incurred by the commission is not a tax the act is not repugnant to the provision of the constitution which requires a uniform and equal rate of assessment and taxation.

The act being constitutional and valid, the court properly denied the appellant the relief prayed for, and the appellees were entitled to a permanent injunction against his interfering with the execution of the law.

The judgment is affirmed.