STATE OF NORTH DAKOTA EX REL. F. E. McCURDY, State's Attorney within and for Burleigh County, North Dakota, v. ANNIE BENNETT and John H. Bennett.

(L.R.A.—, —, 163 N. W. 1063.)

**Personal property — destruction of — when used and kept in bawdyhouse — statutory enactment authorizing — absence of — court has no inherent power to order — court may take possession of and close such house — costs and expenses properly incurred — may charge up against.**

1. In the absence of legislative enactment authorizing the destruction of personal property which is kept and used in connection with the operation and maintenance of a bawdyhouse. The court has no inherent authority to order

---

Note.—On right of state to confiscate property found in bawdyhouse, see note in 52 L.R.A. (N.S.) 932.

On validity of statute or ordinance against bawdyhouses, see note in L.R.A. 1917B, 1078.

37 N. D.—30.

the destruction of such property, and has no authority to order the destruction of any property connected with the operation of a bawdyhouse. The court has the authority, under the present law defining bawdyhouses, prescribing what may be done with such houses and personal property therein, to take possession of, close, and keep closed for the term of one year any house or building in which such bawdyhouse is conducted; and has authority also to take possession of all personal property found therein or on such premises, and place it in the possession, by its order, of a sheriff or some person appointed by the court, to remain in such possession for the term of one year; and has also the right and authority to charge up as costs in such case the expense of caring for all such property during such time the same is in the possession or control of such persons as are authorized by law to take charge of property, such as sheriffs or other persons appointed by the court.

**Injunction — application for — affidavits for — present existence of nuisance — failure to allege — court still has jurisdiction — where complaint does so state — injunctional order — based on both complaint and affidavits.**

2. Where the affidavits in support of an application for injunction refer to the nuisance as having existed, rather than existing, the court is not without jurisdiction, notwithstanding that the affidavits do not allege the present existence of the nuisance at the time of the commencement of the action, where the complaint in the action does allege that the nuisance is existing at the time of the commencement of the action and the injunctional order is based upon both the complaint and the affidavits.

Opinion filed July 14, 1917.

Appeal from the District Court of Burleigh County, Honorable *W. L. Nuessle,* Judge.

Modified.

*Wm. Langer,* Attorney General, and *F. E. McCurdy,* State's Attorney, for plaintiff and respondent.

*Fiske, Murphy, & Linde* and *Sullivan & Sullivan,* for appellants.

The proof is insufficient, as a matter of law, to confer jurisdiction upon the court when there is no showing that any nuisance ever existed, or that it was transpiring and being carried on at the time of the beginning of the action. Comp. Laws 1913, §§ 9644 to 9651.

In cases against bawdyhouses, or to enjoin the maintenance of such a nuisance, the court has no power under our statute to order the destruction of personal property found in such place. Nor has the court a_y inherent power to so order. State ex rel. Robertson v. New

England Furniture Co. (State ex rel. Robertson v. Lane), 126 Minn. 78, 52 L.R.A.(N.S.) 932, 147 N. W. 951, Ann. Cas. 1915D, 549.

(No brief by State.)

GRACE, J. The complaint states a cause of action for the discontinuance of a common nuisance, to wit, a bawdyhouse, alleged to have been maintained at the time of the commencement of the action and prior thereto at the place described in the complaint. As proof of the maintaining of the nuisance, the affidavit of the state's attorney, on information and belief, and the affidavit of F. L. Watkins, upon his own knowledge, were made in support of the injunctional proceedings. The answer was a general denial. The affidavits also constitute the evidence in the case, by stipulation.

The first point raised by the appellants is that the affidavits, which by stipulation constitute the proof in the action, were insufficient as a matter of law to confer upon the court jurisdiction, in that they do not show or furnish any proof that any nuisance ever existed, or that it was transpiring, existing, and being carried on at the time of the commencement of the action. The main contention of the parties in regard to this assignment of error relates to the proposition that there is no allegation or statement in the affidavits that a nuisance is in existence or was in existence at the time of the commencement of the action. In this case, however, the court, in making its injunctional order, bases its order not only on the affidavit of the state's attorney and F. L. Watkins, but also upon the verified complaint. It will be noticed that the complaint alleges that the nuisance was being maintained at the time of the commencement of the action, and this is nowhere disproved by any competent testimony, although the same is denied in the answer; but so far as determining the question of jurisdiction is concerned, the allegation in the complaint, taken together with the fact that there was positive proof of the existence of the nuisance, and these taken together with the presumption of the continuance of the nuisance, it having been shown by competent proof that it did once exist, is sufficient to give the court jurisdiction,—and we hold that the court did have jurisdiction.

As to the other assignment of error, which is that the court had no power as a matter of law under our statute to make an order destroying

the personal property found in the building in which the alleged nuisance is charged to have been maintained, it is a matter of considerable importance, and not easy of solution. The statute referring to that matter is found in Comp. Laws 1913, §§ 9644–9651, inclusive. The main section, however, is § 9644. It will be noticed by such section that the existence of such nuisance when it be established in either a criminal or equitable action, upon the judgment of a jury, court, or judge having jurisdiction, and where it is found in any such proceeding that such a place is a nuisance, the sheriff, his deputy, or any constable of the proper county, or marshal of any city where the same is located, shall be directed to shut up and abate such place by taking possession thereof and closing the same against its use by anyone, and keep the same closed for the period of one year from the date of the judgment decreeing such place to be a common nuisance. Under this statute the court, after having found the place under consideration in this complaint to be a nuisance, ordered the house to be closed up for the period of one year, and all of the personal property therein, consisting of the list of personal property included in the judgment of the trial court, and which it is not necessary to fully describe in this opinion,— but generally such personal property consisted of pictures, a piano, clock, heating stove, chairs, tables, vases, beds and bedding, dressers, commodes, a victrola, the usual dining-room furniture, the usual kitchen furniture, and also a trunkful of cut glass (said to be worth about $500), and other furniture of like nature,—destroyed. There is no question under the statute but what the court had a right to close the house for the term of one year. The sole question, therefore, remaining is whether the court had authority, under its inherent equitable powers, to order the destruction of such property being in the house at the time of the continuance of the nuisance, and at least most of it, to some extent, susceptible of use in the continuance and conduct of such nuisance. All of the personal property is such property as could be used for a good and legitimate use, and was such personal property of which a legitimate use could be made. It is different from the dice which are used in a dice game; poker chips and gambling devices or tables or paraphernalia for which no other beneficial use could be generally found, and which would be generally useless excepting in the conduct and operation of gambling games and devices. Our

statute does not provide that such property may be destroyed. Has the court then the power, in the exercise of its function as a court of equity,—on the grounds of public policy; for the public good; the moral welfare, the moral safety of the community; and for the protection of the younger members of the community, both male and female, if the court concludes that such property is being used and persistently used to carry on and operate a nuisance,—to order its destruction? We are clear that the court has no such inherent power, and the court has such power only where conferred upon it by the legislature. The United States Supreme Court, in the case of Mugler v. Kansas, 123 U. S. 659, 31 L. ed. 210, 8 Sup. Ct. Rep. 273, has decided with what branch of the government the police power is lodged, and has determined which branch of the government has power to determine questions of police regulation so as to bind all, and has determined that the legislative branch of the government is the division of the government with which is lodged the power to determine what rules, regulations, and laws of police power shall be enacted and be operative. The United States Supreme Court in such case, speaking through Justice Harlan, uses the following language, referring to police powers: "Power to determine such questions so as to bind all must exist somewhere; else society will be at the mercy of the few who, regarding only their own appetites or passions, may be willing to imperil the peace and security of the many, provided only they are permitted to do as they please. *Under our system that power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public peace.*"

In the case of Balch v. Glenn, 85 Kan. 735, 43 L.R.A. (N.S.) 1080, 119 Pac. 67, Ann. Cas. 1913A, 406, the following is found in the syllabus: "The legislature of the state may declare that to be a nuisance which is detrimental to the health, morals, peace, or welfare of its citizens, and may confer power upon local powers or tribunals to exercise the police power of the state when in the judgment of such tribunals the conditions exist which the legislature has declared constitute such nuisance."

We think it is well settled that the power to declare what is a

nuisance and to enact or bring into existence laws, regulations, powers, and remedies to destroy such nuisance, rests primarily with the legislative branch of the government. Our legislature has declared, for instance, that places where intoxicating liquors are kept for sale, or a place to which persons resort to drink intoxicating liquors, are a nuisance, and has authorized the abatement of such nuisance and in connection therewith authorized the destruction of any liquors found upon such place. It has also declared that the keeping and maintaining of a place where gambling is carried on is a nuisance, and has authorized the discontinuance of such nuisance and the destruction of all gambling apparatus connected with such place. Our legislature has also enacted a law, being § 9644, Comp. Laws 1913, which defines bawdyhouses, and declares them to be a nuisance, and authorizes any place or house of ill fame, assignation, or prostitution, maintained as a place to which persons may resort or visit for unlawful sexual intercourse, to be abated and closed up for a period of one year, and has also authorized the officer to take possession of all personal property found on such premises, and hold the possession of such premises, and keep the same closed until final judgment is entered, or until the possession of the same shall be disposed of by an order of the court or judge upon a hearing had before it for such purpose. This is the expression of the legislature upon this subject, and confers the only power relative to such subject which the courts may exercise. In the law enacted by the legislature relating to bawdyhouses, it does not authorize the destruction of the property, and until the legislature enacts such a law the courts are without the inherent power to order the destruction of property used in the maintenance of a bawdyhouse. The court can order that all such property shall be taken possession of by a sheriff or other public officer, whether the same is real or personal property, and retained in the possession of such public officer or other person appointed by the court by its order, for the full term of one year, and may also order that the expenses of holding and caring for such property during the year to be taxed as a part of the costs in the action. This is as far as the legislature has gone, and the court is not authorized to go any farther, in view of the fact that the power to enact laws upon such subject, and to make regulations concerning the abatement of such nuisance and the disposition of the property connected with such nuisance and

what may be done to abate such nuisance, is lodged wholly and entirely with the legislature.

The case of State ex rel. Robertson v. New England Furniture Co. (State ex rel. Robertson v. Lane), 126 Minn. 78, 52 L.R.A.(N.S.) 932, 147 N. W. 951, Ann. Cas. 1915D, 549, holds that the court may order the destruction of property used in the maintenance of a bawdyhouse. The legislature of Minnesota, however, has enacted a statute directly upon this subject, authorizing the destruction of this property when so used. They do, however, in such case say that equity could have dealt with the property in any way reasonably necessary to suppress the nuisance, meaning thereby that the court of equity could have assumed any powers it saw fit to destroy the nuisance, even in the absence of a statute. We do not believe such holding is sound as applied to nuisances and property of the character here involved, in view of the fact that the power to deal with common nuisances, and to enact laws defining them and for their discontinuance and the disposition of property connected therewith and its destruction, if necessary to abate such nuisance, is lodged wholly and entirely in the legislative branch of government, as is clearly shown from the conclusion reached by the United States Supreme Court in the case referred to,—and there are many other cases to the same point and of like import.

The judgment of the District Court is reversed in so far as it orders the destruction of the property mentioned and set forth in its findings of fact and decree.

Robinson, J. (dissenting in part). This is an appeal from a judgment or order which is to the effect that the defendants have kept in Bismarck a bawdyhouse, and that the sheriff take possession of the house and keep it securely locked for one year, and destroy all the stoves, beds, furniture, and furnishings of the house, amounting to the value of $2,000 or $3,000. The proceeding was commenced by warrant or order signed by the judge, directing any sheriff, constable, or policeman to take possession of the house, and to lock and hold the same, with all the personal property therein.

If the judgment is valid, then the most innocent party in Bismarck may be charged with the keeping of a bawdyhouse, and at any moment

of the day or night he may be thrown out of his house and home, and have it locked up and his property destroyed. Such a procedure is unknown to the common law, and it is unknown to common sense and common reason. It leads to the destruction of civil liberty, the burning of Salem witches, and the persecution of those who do not think as we do.

In Blackstone we read that a man's house is his castle, wherein he may defy even the monarch, but, under the spell of modern reform, if some irresponsible detective, working for his dirty fee, makes affidavit, whether true or false, charging a person with the keeping of a bawdyhouse, then a party may be thrown out of his house and the house and all the property destroyed, and, as in this case, it may all be done in a summary manner and without a trial by jury.

And still the Constitution provides: The right of trial by jury shall be secured to all, and shall remain inviolate. Under constitutional law, before the courts may hang a man, or send him to state's prison, or throw him out of his house, or destroy his property, they must give him a trial by jury. The right of trial by jury is a thousand times more sacred than the right to abate forbidden houses and to destroy property. Indeed, the Constitution contains nothing to warrant the destruction of property, and it does protect property to the same extent that it protects life and liberty. It reads: All men are by nature equally free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing, and protecting property and reputation, and pursuing and obtaining safety and happiness. The right of trial by jury shall be secured to all, and shall remain inviolate. No person shall be compelled in any criminal case to be a witness against himself, or be deprived of life, liberty, or property without due process of law. Excessive bail shall not be required nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted.

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due process of law, and right and justice administered without sale, denial, or delay.

These are among the most sacred provisions of the Constitution. They cannot be too often repeated. It were well to commit them to memory, and to repeat them morning and evening as we do the Lord's Prayer and the Ten Commandments. The action is under chapter 59, Laws of 1911, which was house bill No. 136. At the close of the session the bill was rushed through and passed without reading or discussion, contrary to the Constitution. The act declared every bawdy-house to be a common nuisance, to abate which an action may be commenced by any person in the name of the state, and that at the commencement of such action, on an affidavit stating the offense, the judge must grant an injunction and issue a warrant commanding the officer to take possession of the house and to securely lock and hold the same to abide the final judgment. Then it is provided that a final judgment against the accused shall direct the officer to shut up and abate the place, and to keep the same securely closed for one year.

The statute contains nothing to warrant the destruction of personal property, and, if it did, it would be clearly void, and it is void in declaring a house to be a public nuisance when in fact it may not be a nuisance. A house may be a public nuisance when it overhangs the street, or when it becomes a worthless firetrap and a menace to the city; but shall we say that the McKenzie hotel is a common nuisance, and that it should be closed for one year, by reason of the fact that to some extent it is or may be used, as all hotels are used, for gambling, drinking, and forbidden love? Shall we say that the grass and parks are nuisances to be destroyed because of use in that way? Shall we say that, on mere affidavits and without trial by jury, any party may be turned out of his house and deprived of his liberty and property? Even Shylock disdained to beg for life without his property. He said: You take my life when you do take the means whereby I live.

There is nothing in the record to show that the house in question is a nuisance. For aught that appears from the affidavits, it may be one of the nicest and best and most secluded houses in the town. When a party offends against the law he may be punished by the law, and as provided by the law, but not by destroying his property or dispossessing him of lands or houses or home. The act in question is void. The judgment is void, and it should be reversed.