PAUL GENZ, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. Where insanity is set up as a defence to an indictment for murder, unless it appears that the prisoner was not conscious, at the time of the killing, that the act which he was doing was morally wrong, he is responsible, even if it be shown that he was impelled to its commission by an impulse which he was unable to resist.

2. Where it clearly appears that testimony which was illegally admitted, on the trial of a criminal cause, could not have injuriously affected the defendant, the admission of such illegal testimony does not constitute a ground for the reversal of the judgment.

On error to the Hudson Oyer and Terminer.

*30 Vroom.* Genz v. State.

For the plaintiff in error, *Gilbert Collins* and *William S. Stuhr*.

For the defendant in error, *Charles H. Winfield*, prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, J. The plaintiff in error was indicted by the grand jury of the county of Hudson for the crime of murder, in willfully, deliberately and premeditatedly killing one Clara Arnim, on Tuesday, the 28th day of August, 1894. Being tried upon that indictment, he was found guilty, by the verdict of a jury, of murder of the first degree. The judgment entered upon that verdict, and all the proceedings had upon the trial, have been removed, by writ of error, into this court, and it becomes our duty, under the supplement of May 9th, 1894, to the "Act regulating proceedings in criminal cases" (*Gen. Stat., p.* 1154, § 170), to review the whole of such proceedings in order that we may be satisfied that the plaintiff in error has not suffered manifest wrong or injury either by the rejection of testimony, or in the charge made to the jury, or in the denial of any matter by the trial court which was a matter of discretion, or upon the evidence adduced upon the trial.

It was admitted at the trial that Clara Arnim, who was the mistress of the plaintiff in error, came to her death at his hands. His defence was that he was insane at the time when he committed the act, and the principal injury which it is alleged on his behalf that he suffered, at the trial, was the failure of the court to correctly charge the jury on the subject of insanity as a defence. The instruction of the court to the jury on this point was as follows, viz.:

That the defence of insanity is that the mind of the prisoner was so impaired and diseased that, at the time of the commission of the act of killing, he was not capable of distinguishing the nature and quality of the act done by him; that he was then incapable, by reason of mental disease or impairment of

his mind, to conceive the intent to kill the deceased; that at that time he was incapable of distinguishing between right and wrong with respect to that act; that, if he was in this state of mind, in the eye of the law he was insane; that the burden of proof, in making out the defence of insanity, rests upon the prisoner; that he is presumed to be sane, and that when he sets up the defence of insanity he must make out such defence by sufficient proof—such proof as would satisfy the jury that he was mentally incapable of understanding the nature and quality of his act, or incapable of understanding whether his act of killing was right or wrong; that if the jury should find the prisoner was, by reason of any disease of the mind at the time of the commission of the act of killing, incapable of distinguishing between right and wrong in the doing of the act, it would be their duty to acquit him of any degree of murder.

It is insisted, on behalf of the plaintiff in error, that this instruction was not a correct exposition of the law of insanity as a defence in criminal cases, and that the court should have charged the jury that, if they believed from the evidence that the prisoner was mentally diseased, and, being in that condition of mind, was forced by an irresistible impulse to take the life of the deceased, it was their duty to acquit him.

Whether or not the true test of responsibility for criminal acts, in cases of alleged insanity, is the ability to distinguish right from wrong, has never been considered or determined in this court; but, ever since the charge of the court to the jury in the case of *State* v. *Spencer,* 1 *Zab.* 196, it has been accepted as the law of this state that if the accused, at the time of committing the act, was capable of distinguishing between right and wrong, and was conscious that the act was one which he ought not to have done, he cannot be excused on the ground of insanity.

Since the promulgation of that decision more than fifty years ago, the test of responsibility in cases of alleged insanity there laid down has always been adopted by the criminal courts of our state in instructing juries upon this branch of

the law. A rule so important, and which has been accepted so long and so universally, ought not now to be changed by judicial decision. As was said by Chief Justice Beasley in the case of *Graves* v. *State,* 16 *Vroom* 208, in commenting upon an attack made upon another rule laid down in the Spencer case, " If such a rule, after so conspicuous and protracted an existence, is to be pushed aside, or even is to be considered as liable to challenge on theoretic grounds, it is difficult to divine upon what stable basis the administration of the law is to be conducted. Very many of the legal regulations which belong to the trial of causes, criminal and civil, are the creatures of custom and usage, and if such regulations, after having been unquestioned and enforced for half a century, are to be deemed, with respect to their legality, subject to assault, the utmost uncertainty and confusion would be introduced." The test of criminal responsibility in cases of alleged insanity, as stated by the trial court in its charge to the jury, was in accordance with the settled law of the state, and consequently the plaintiff in error suffered no injury therefrom.

But even if it had been the policy of our law to relieve insane persons from responsibility for criminal acts, the doing of which they knew to be wrong, provided they were impelled by irresistible impulse to do them, it is not perceived how such a principle would have had any relevancy in the case before us. A patient examination of the whole testimony has failed to disclose the existence of a single fact which affords any ground for concluding that the killing of Clara Arnim by the plaintiff in error was the result of an irresistible impulse on his part. And not only is this so, but the plaintiff in error himself, by his testimony given on the witness-stand, negatives any such idea. It appears that, on the morning of the homicide, he bought the revolver with which he shot to death the woman who had been his mistress; that after purchasing the revolver, he went to a flower store and purchased a bouquet of flowers, which, the florist understood from him, was to be used at a funeral; that he then went to a barber

shop to be shaved, and that as he sat in the chair he told the barber to hurry up, because he (the plaintiff in error) had only eight minutes to live; that he only had until two o'clock to live, and that he intended to kill himself at that hour; that after being shaved he went to the house where his mistress resided, but that, before entering it, he stopped in an adjoining saloon and took a glass of ginger ale, and that, as he left the saloon, he bade the proprietor farewell, saying, "Good-by, you will never see me again; don't condemn me too hard." Within five minutes after leaving the saloon he had fired the shots which took the life of his mistress, and she was shortly afterwards found lying dead upon the floor, holding in her hand the flowers which he had bought, and with his arms clasped around her.

The story told by him on the witness-stand was that he did not know, and could not explain, why he had purchased the revolver, although he remembered that he had done so; that, although he recollected being in the flower store, he did not know what was in his mind when he bought the bouquet; that he remembered slightly his being in the barber shop, but that he had no recollection of going to the house of his mistress or of shooting her; that his first recollection of being in her house or of seeing her was when she was lying bleeding and dead upon the floor of her room; that he knows that he must have shot her, but that he did not remember anything whatever about it.

It needs no discussion of these facts to show that there is nothing whatever in them to justify the inference that the killing of Clara Arnim by the plaintiff in error was the result of an irresistible impulse on his part, or even to suggest the idea that such was the case. The conclusion that these facts tend to show the existence of an uncontrollable impulse can only be supported by holding that an uncontrollable and an unresisted impulse are one and the same thing.

That the prisoner had thought of taking his mistress' life prior to the day on which the homicide occurred, and resisted the impulse to do so, is evident from his own testimony. He

says that, on the Sunday evening preceding her death, he had a conversation with her in which she said to him, "Paul, you look so strange; what is the matter with you?" and that he replied to her, "Clara, I have got to take my whole will power together that I don't take you by the throat and strangle you." He further says that, while he was talking with her on this occasion, he made up his mind to commit suicide on the Thursday then following. We are told, on his behalf, that this conversation affords some evidence of the fact that the homicide was the result of an irresistible impulse, but I am unable to see that it has any such effect. Instead of showing the existence of an impulse which could not be controlled, it proves that the impulse which existed in his mind to take her life was one which he was not only capable of resisting, but was one which he actually did resist on the occasion concerning which he testified.

A careful reading of these proceedings has led me to the conclusion that, when the plaintiff in error purchased the revolver with which he shot Clara Arnim, and the flowers which were found in her hand after her death, he had made up his mind to first shoot her and then himself. He carried out this plan so far as the taking of her life was concerned, but abandoned it when it came to the taking of his own life, although no change seems to have occurred in the circumstances which caused him to determine to kill her and himself. That such a thing as an irresistible impulse to take life sometimes exists in the human mind, I am willing to concede. I do not, however, believe in the uncontrollability of an impulse to kill, which remains irresistible so long as the weapon is directed against another, but ceases to be so when the slayer turns it against himself.

It is further alleged by counsel for the plaintiff in error that the trial court erred in refusing certain requests to charge, and thereby manifestly injured the prisoner. The jury had been instructed by the court that in a case of murder the presumption was that it was of the second degree until the state should establish, by affirmative proof, that the killing was

willful, deliberate and premeditated, and the court was then requested to charge that there was no such proof in this case unless effect was given to certain statements made by the prisoner after the killing, and that, if those statements were made by an insane man, they should have no effect. This request was refused, and, in our opinion, properly so. An examination of the case makes it clear that there was testimony, outside of the statements made by the prisoner after the homicide, which would have been sufficient to sustain a verdict of murder of the first degree if the jury had so found.

Another alleged injurious error to which we are pointed by counsel is the admission of certain evidence, against objection, which is said to have been incompetent. The situation was this: The state had proved that the prisoner and the deceased had been for some time living together as man and wife, and proposed to show that a few weeks before the homicide the deceased became engaged to be married to one Bernard Stensel, who thereafter went to Chicago to live. The prosecutor of the pleas then sought to prove that the prisoner, a few days before the shooting, had threatened to kill Stensel if he should meet him, and the court permitted this evidence to be put in against the objection of the prisoner. It seems to me that this testimony was competent, as tending to show the determination of the prisoner to prevent the marriage of his paramour with Stensel even if it was necessary to destroy life in order to do so, and as further tending to show that, by reason of the fact that Stensel was beyond his reach, he killed her in order to accomplish that result. But even if the evidence objected to was incompetent, its admission would not justify this court in reversing the judgment under review. The eighty-ninth section of our Criminal Procedure act (*Gen. Stat.*, *p.* 1138) declares that no judgment given upon any indictment shall be reversed    *   *   *   for any error except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits. In *Hunter* v. *State*, 11 *Vroom* 495, it is said by this court that, by force of this statute, the admission of illegal testimony will not avoid a judg-

ment on error if it plainly appears that such testimony could not have injuriously affected the defendant on the merits of the case. That the admission of the testimony now under consideration could not have injuriously affected the plaintiff in error on the merits, even if it was illegal, is beyond question, for he himself, when upon the witness-stand, testified upon his direct examination to making the same threat which was sought to be proved against him by the testimony objected to.

The counsel for the plaintiff in error have not called our attention to any other matter which seems to them to have injuriously affected their client on the trial of this indictment, nor has the careful examination which we have made of the record and proceedings sent up with the writ disclosed the existence of any. On the contrary, that examination and the exhaustive consideration which we have given to this case has satisfied us not only that no injurious error has crept into the trial, but also that the plaintiff in error has not suffered any wrong or injury either " by the rejection of testimony, or in the charge made to the jury, or in the denial of any matter by the trial court which was a matter of discretion, or upon the evidence adduced upon the trial."

The judgment, therefore, should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, GUM-MERE, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAY-TON, HENDRICKSON, KRUEGER, NIXON.   12.

*For reversal*—None.