Statement of the Case.
MONROE, C. J.
Defendant prosecutes this appeal from a judgment enjoining him from interfering with plaintiff in the work of entering upon his property and destroying certain orange and other citrus trees affected with citrus canker.
Plaintiff was proceeding under the authority of Act 36 of 1910, p. 55, entitled:
“An act to provide measures relative to fruit and crop pests and diseases; to divide the work incident to said subject between the Louisiana state board of agriculture and immigration and the experiment stations of the Louisiana State University and Agricultural and Mechanical College; to delegate to the Louisiana state board of agriculture and immigration power to make rule's, ordinances and regulations and providing penalties for the violation thereof; and to repeal Act No. 6 of the Extra Session of the General Assembly of 1903.”
The act provides for the transfer to the “experiment stations” of the apparatus, literature, and other property of the “state crop pest commission,” repeals Act No. 6, Ex. Sess. 1903, which created that commission, and divides the entomological work of the state between those stations and the plaintiff board, declares that the commissioner of agriculture shall see that the regulations of the board are executed, and vests him with authority to take steps to that end during the intervals between the meetings of the Board. It further declares (section 4) that:
Said board “shall have full and plenary power to deal with all crop and fruit pests and such contagious and infectious crop and fruit diseases as in the opinion of the entomologist, may be prevented, controlled, or eradicated; with full power to make, promulgate and enforce such rules, ordinances and regulations, and to do and perform such acts as, in the judgment of the entomologist, may be necessary to control, eradicate or prevent the introduction, spread or dissemination of all injurious crop and fruit pests and diseases, and all the rules, ordinances and regulations of said board shall have the force and effect of law so far as they conform to the general laws of the state and of the United States, five days after their promulgation in the official journal of the state. * * * ”
That (section 5):
“The said board * * * shall have power * * * to enforce its * * * regulations in any court of competent jurisdiction by civil, as well as criminal proceedings, and if the remedy elected to be pursued be by writ of injunction, no court of this state shall have the right previous to a trial upon the merits, to set aside such a writ on bond. * • * ”
That (section 6):
“The entomologist shall prepare and publish a list of dangerous crop and fruit pests and infectious and contagious plant diseases, known or suspected to be present within the state, or which might be introduced; * * * that said entomologist, with the approval of the commissioner of agriculture, shall have printed from time to time bulletins containing such information, remedies, preventatives, etc., as he may consider necessary, * * * also, the * * * regulations of the said board, * * * which said bulletins shall be distributed to all farmers and other interested persons. * ' * * When the entomologist suspects that any pest or plant disease, tested by him as dangerous, exists in any part of the state, he shall verify such *759 suspicion, and, if samé be well founded, said entomologist shall take immediate charge of said infested or infected property and adopted such measures for the treatment or extermination of such pest or disease as he may deem advisable; said entomologist, or any of his duly authorized assistants, shall have authority to inspect any building, warehouse, depot or other place where property is located, or premises, nurseries, orchards, groves or fields suspected to be infested or infected by any crop pest or disease, listed or bulletined * * * by said entomologist, and if, in his opinion it is necessary to destroy the property so infested or infected in order to prevent the further spread of said injurious crop pest or disease, he shall have authority to destroy said property and without compensation to the owner or owners. * * * Any one who shall seek to prevent any inspection under the direction of said state board, * * * by said entomologist, or his authorized assistants, or who shall otherwise interfere with the agents or employés of said board or said entomologist while in the performance of their duties, shall be deemed guilty of a misdemeanor and shall, upon conviction thereof, be punished by a fine of, * * * or imprisoned for, * * * or by both fine and imprisonment. * * * ”
In the petition herein filed, plaintiff alleges that in 1913 it was reported to it and to the entomologist that a pest or plant disease, not theretofore listed by him, but thereafter listed, and known as “citrus canker,” existed, in, the orange districts of the state, and that the entomologist verified the report; that he and his associates, in collaboration with the scientists of the Department of Agriculture of the United States, made a thorough and systematic study of the disease, its causes and remedies, and reached the conclusion that the only effective treatment was to exterminate it by burning the infected trees; that, upon the completion of said investigation, the parties thereto caused to be printed a bulletin containing such information, preventives, and remedies relating to said disease as. were considered necessary, listing the same as infectious and contagious, and giving notice that it threatened the destruction of the citrus fruit industry of the state and that all infected growth was subject to destruction, which bulletin was distributed among farmers and other interested persons; and that thereupon, with full authority from petitioner, the entomologist began the burning of such growth; that, in the discharge of his duty in the premises, he caused to be inspected the orange grove of the defendant, situated on the Mississippi river, in the parish of Plaquemines, and in April, 1916, it was found that a large number of the trees were infected with said disease, which finding was confirmed upon a personal inspection by the entomologist who found the disease to be prevalent to such an extent as, in his opinion, to render it necessary for the protection of'the other groves in the vicinity and of the state at large that the infected trees be destroyed, which opinion was communicated to defendant, who thereupon stated that he would not permit their destruction, in which determination he has since persisted; that, if said trees are permitted to stand as they are, the disease with which they are infected will necessarily be communicated to others, and will spread throughout the parish and state, and that their destruction is the only possible means by which said disease can be eradicated, or even cheeked; that, if it be not eradicated, shipments of oranges and orange trees from this to other states will be prohibited by quarantine, and the orange industry in this state will be destroyed.
Wherefore petitioner prayed that defendant be required to show cause why he should not be enjoined from interfering with the action proposed to be taken by petitioner.
By way of return to the order nisi which was served on him, defendant alleges that Act 36 of 1910 is unconstitutional, in that the objects disclosed by sections 5 and 6 are multifarious, and are not expressed in the title of the act; that said section 5 does not authorize, or purport to authorize, the employment of the writ of injunction for the admission of a trespass; that section 6 is void, in that it purports to authorize the destruction of private property without previous compensation and without due process of *761 law; that the petition does not disclose a case justifying the destruction of respondent’s growing fruit trees by judicial decree, inasmuch as it does not thereby appear that destruction by fire is the only means of eradicating citrus canker from orange trees, but, on the contrary, appears that plaintiff and its experimenters have dealt with the problem involved for less than three years, and are therefore incompetent, either from experience or from the superficial knowledge thus acquired, to advise the court that the destruction of the trees by fire, or violence and trespass, is the only means of eradicating the disease in question; that respondent has been a practical orange grower for 16 years, has made a special study of the diseases incident to the growth of orange trees, has kept in touch with the progress of experiment in the treatment of citrus canker, and has applied and is still applying to his own trees approved methods to prevent said disease.
Opinion.
It is shown that of defendant’s grove of perhhps 2,200 trees, exclusive of young trees in his nursery, something like 57 per cent, were infected with citrus canker when this case was tried, and, notwithstanding the averment of defendant’s return that he “has applied and is still applying to his own trees approved methods to prevent said disease,” he did not take the stand to inform the trial court what these methods are or whether they proved to be worth trying; in fact, he offered no.evidence in support of either the denials dr the averments of his return. Plaintiff, on the other hand, called the plant pathologist and the entomologist and several inspectors of the experiment station, and it appears from their testimony that citrus canker was recognized in this country some three or four years ago, and has since that time been the subject of much serious consideration by scientists and by those engaged in the citrus fruit industry in different parts of the country; that it is a bacterial disease and exceedingly infectious; that no means have been discovered of eradicating, or even checking, it, save the destruction of the trees; and that over 2,000,000 of trees have been destroyed, to that end, in Elorida, and a great many in Louisiana. Dr. Edgerton, the plant pathologist, says in his testimony:
“The scientific men in Florida and Alabama and the United States department at Washington have been working. They have tried out all the known methods of treating plant diseases by using' fungi sprays, and also by burning. None of them have in any way checked the disease, and in most cases it has tended to increase the spread of the disease. * * * The only treatment that has been found successful and proved successful is burning the trees. Q. How is this disease transmitted from one tree to another? A. Erom all experiments and observations that have been carried on, the most important factor in spreading the disease is the nursery stock; that is, shipping diseased stock into healthy territory. The next most important factor is the human agency. .A man picking fruit and working among the trees will get it on his hands and clothes and spread it among the trees. Then storms are very influential, especially heavy storms, like the September hurricane. * * * Animals of any kind, anything that goes from tree to tree, will help spread the disease.”
[1] The attack upon the constitutionality of the act under which plaintiff is proceeding as based upon the ground of multifariousness of objects is without merit. The act has but one object within the meaning of the Constitution, which is to provide measures of prevention and protection against fruit and crop pests and diseases, and that object is declared in its title. All else, whether in the title or the body of the act, are but means to the end so declared. State v. J. Foto & Bro., 134 La. 154, 63 South. 859; City of Shreveport v. Kahn, 136 La. 371, 67 South. 35; Thomas v. Board of School Directors, 136 La. 499, 67 South. 345; State v. Doremus, 137 La. 269, 68 South. 605.
[2] Equally without merit is the attack as based upon the grounds that the act contemplates the taking of private property without due process of law and without compensation previously made. The case is well within the *763 cloetrinel recognized by this court in City of New Orleans v. Charouleau, 121 La. 890, 46 South. 911, 18 L. R. A. (N. S.) 368, 126 Am. St. Rep. 332, 15 Ann. Cas. 46, in which it was held competent for the state, in the exercise of its police power, to authorize the city council to require cows to be inspected, and, if found tuberculous, to be destroyed, without compensation to the owner. See, also, Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; Balch v. Glenn, 85 Kan. 735, 119 Pac. 67, 43 L. R. A. (N. S.) 1080, Ann. Cas. 1913A, 406; State v. Main, 69 Conn. 123, 37 Atl. 80, 36 L. R. A. 623, 61 Am. St. Rep. 30; Grimes v. Eddy, 126 Mo. 168, 28 S. W. 756, 26 L. R. A. 638, 47 Am. St. Rep. 653; Cooley’s Const. Lim. p. 877.
[3] The proposition that, though all the orange groves in the state may in the meanwhile be destroyed by citrus canker, the defendant should be allowed to maintain that disease in his grove, on the chance that he may discover, and until he does discover, a remedy for it which may be less drastic than the burning of the trees, is untenable. The owners of the other groves are entitled to protection now before the destruction emanating from defendant’s place overtakes their groves.
judgment affirmed.