# CHARLESTON.

SUE M. LEMON *v.* W. E. RUMSEY, *State Entomologist*

(No. 6509.)

Submitted November 12, 1929. Decided November 26, 1929.

A. C. *McIntire* and *Morton & Snyder*, for appellant.

*Howard B. Lee*, Attorney General, *R. Dennis Steed*, Assistant Attorney General, *F. S. Tavenner* and *Kilmer & Byrer*, for appellees.

HATCHER, JUDGE:

Chapter 84, Acts of the Legislature of 1925, is entitled "An act providing for the control and eradication of the plant disease commonly known as 'apple rust' in the several counties of the State." The act contains the following provisions: Any red cedar tree growing within a radius of three miles of an apple orchard is a public nuisance; upon the request in writing of ten or more reputable freeholders of any

county, the state entomologist shall ascertain if any red cedar tree in the locality is the source of or the host plant for the disease commonly known as "rust of the apple"; if he finds a cedar so infected and it constitutes a menace to 'the health of an apple orchard within the prescribed area, he shall require in writing the owner of the cedar to destroy it, stating briefly the facts which necessitate its destruction and calling attention to the law under which the requirement is made; upon the failure of the owner to comply with the order, the state entomologist shall cause the tree to be cut down and destroyed at once; infected ornamental red cedars may be treated if, in the judgment of the entomologist, it is practical to do so and they are rendered harmless; notice may be served on the owner in the manner provided by law for service of like process; the necessary expense of the entomologist in cutting the tree is to be paid by the county court; the entomologist is empowered to enter any public or private premises for the purposes of executing the provisions of the act and any person who shall hinder or obstruct him shall be fined; an owner aggrieved by the destruction of cedar trees may appeal to the circuit court, which shall order payment of damages, if any, to be made out of the county fund; and the orchard owners shall reimburse the county for any damages so paid.

The plaintiff owns a tract of about ten acres on the outskirts of Shepherdstown, West Virginia, unimproved but attractive for home sites, upon which were some five hundred cedar trees. In 1925 and 1927 petitions were filed with the state entomologist requesting that he investigate the cedar trees in the neighborhood of the orchards owned by the petitioners. One of such orchards is within three miles of the plaintiff's property. The entomologist took no immediate action as to her property, because of lack of funds and of official engagements elsewhere. On January 29, 1929, he did investigate her property, and determined that her trees were red cedars and were infected with rust. Three days later he served notice upon her directing that she cut and destroy the cedar trees upon her property within five days. She did not do so. On February 4, 1929, his assistants entered her

property, and had cut about 164 of the trees when stopped by a temporary injunction. After a hearing the circuit court dissolved the injunction. The plaintiff appeals from that decision, questioning (1) the constitutionality of the act; (2) the sufficiency of the petitions and the notice; and (3) the propriety of the procedure.

(1) The act is modeled closely after a similar act in Virginia, which has been held constitutional not only by the Virginia court but by the federal courts. See *Bowman* v. *State Entomologist*, 128 Va. 351, 12 A. L. R. 1121; *Miller* v. *State Entomologist*, 146 Va. 175; *Miller* v. *Schoene (Va. State Entomologist)*, 276 U. S. 272; *Kelleher* v. *Schoene*, 14 Fed. (2nd) 341; *Kelleher* v. *French*, 22 Fed. (2nd) 341. Similar legislation has been generally upheld. *Balch* v. *Glenn*, 85 Kan. 735, 43 L. R. A. (N. S.) 1080, Ann. Cases, 1913A, 406; *County of Los Angeles* v. *Spencer*, 126 Cal. 670, 77 Am. St. Rep. 217; *Colvill* v. *Fox*, 51 Mont. 72, L. R. A. 1915F, 894; *Board of Agriculture* v. *Tanzman*, 140 La. 756, L. R. A. 1917C, 894, Ann. Cases 1917E, 217; *Ex parte Hawley*, 22 S. D. 23, 15 L. R. A. (N. S.) 138; Cooley's Constitutional Limitations (8th Ed.), p. 1334. "The authorities leave no room for doubt", says 20 R. C. L., p. 412, sec. 29, "that pests of various sorts may constitute nuisances, and that the legislature as a consequence has power to provide for their abatement." So well established is this legislative right that we see no useful purpose in elaborating here the principles supporting it. Reference may be had therefor to the authorities cited, which are generally accessible to the legal profession.

The Virginia act provides for an appeal to the circuit court by the landowner from the order of the state entomologist requiring the destruction of cedar trees. The West Virginia statute has no such provision. Counsel for plaintiff contend that lack of such a provision clearly differentiates our statute from that of Virginia, and deprives a land owner of his property without a judicial hearing. Counsel overlook a fact which our legislature undoubtedly had in mind, that courts of equity are always open to prevent an unwarranted invasion of property rights such as might arise under this act. Witness this very proceeding. Why then provide a forum when one

already exists? The Virginia statute gives the circuit court authority "to pass upon all questions involved" and to determine the amount of damages incurred by the landowner. A court of equity has the inherent authority to pass on all the questions involved in such cases, except that of damages. Our act provides a method by which an owner may secure compensation after the destruction of his trees. Besides, it is generally established that a state may authorize the summary abatement of a nuisance without judicial process or proceeding. This power was recognized at common law. 20 R. C. L., p. 487, sec. 100; 46 C. J., p. 755, sec. 357. "The destruction of the infected trees by order of a public official after due inspection is a remedy which, however severe, is one appropriate to the end in view, and may be properly enforced without any preliminary judicial inquiry." *State* v. *Main,* 69 Conn. 123, 137. Consequently due process of law is not denied by our Act.

In *Bowman* v. *State Entomologist, supra,* it was found that the destruction of red cedar trees infected with the apple rust was "absolutely necessary to prevent the extinction of the apple industry" in the vicinity of the cedars. In *Miller* v. *State Entomologist* it was found that cedars so infected were "the deadly enemy of certain very valuable commercial apples; so deadly that one or the other must go." Here the evidence shows that about 33% of the apple varieties are immune to the rust, and that while the trees and the fruit of the susceptible varieties are materially reduced in size, the trees are not killed and the fruit is not entirely ruined. Consequently, counsel for plaintiff contend that while the proof in the Virginia cases demonstrated infected cedars to be a nuisance, the evidence here does not do so; and that the declaration of our legislature to that effect does not prevent the courts from determining that fact. They cite *Lawton* v. *Steele,* 152 U. S. 133, 140, and other authorities holding that a legislature may not declare that to be a nuisance which is clearly not so. This is true, for such a declaration would be arbitrary. The fiat in our act that a red cedar tree within three miles of an apple orchard is a public nuisance, was meant to apply only when such orchards contain a variety

of apples susceptible to the rust disease. This is apparent not only from the general purpose of the act but from section 2 thereof which requires as a condition precedent to destruction of the cedar tree, that it must constitute a menace to the health of the apple trees within the designated radius. As so limited we. see nothing arbitrary in the enactment. When not exerted arbitrarily, the police power of a state is subject to no limitation. *Hadacheck* v. *Sebastian,* 239 U. S. 394, 410. It is therefore illogical to say that the validity of a legislative declaration, made under its police power, may depend on the weight of evidence in a particular case attacking its constitutionality, where the facts may or may not be well developed. It is not a function of courts "to conduct investigation of facts entering into questions of public policy merely, and sustain or frustrate the legislative will, * * * as they may happen to approve or disapprove its determination of such question." *Powell* v. *Pennsylvania,* 127 U. S. 678, 685-6. Courts will presume that a legislature has made the fullest investigation before declaring a fact. Other jurisdictions may support counsels' contention, but this Court is committed to the doctrine that legislative determination of a fact is final. *Woodall* v. *Darst,* 71 W. Va. 350. "Police legislation for the extirpation of a disease of such a nature, which the legislative department deems dangerous to the public welfare, cannot be pronounced invalid by the judicial department by reason of any difference of opinion, should one exist, between these two agencies of government, as to the probability of such danger." *State* v. *Main, supra,* 136.

Counsel also contend that the act does not conform to the constitutional requirement that it shall embrace only one object, which shall be expressed in the title. Section 30, Article 6, Constitution. The act has but one purpose, as its title plainly states. The several provisions of the act are but means to that end, and reasonably necessary thereto. This same contention was made against the Virginia, California and Louisiana acts on the subject, each of which contain a number of provisions ancillary to the object of the act, but none of which has a more comprehensive title than that of our act. The court of each state held the contention to be

without merit. *Bowman* v. *State Entomologist, supra; County of Los Angeles* v. *Spencer, supra; Louisiana St. B'd* v. *Tanzman, supra.* We see no reason to hold differently here.

The Supreme Court of the United States has continually warned the judiciary against the danger of encroaching on legislative domain, and has taken the stand that, ''Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt.'' *Sinking Fund Cases,* 99 U. S. 700, 718. Under this rule the plaintiff's contentions against the constitutionality of the act are of no avail.

(2) Several corporations are included among the ten necessary signatories of the request to the entomologist. Plaintiff contends that corporations are not ''freeholders'', as the statute requires. It was shown that these corporations owned apple orchards in Jefferson county. Corporations are not freeholders in a technical sense; but because of the interest of these corporations in the very objects sought to be protected, we are of opinion that the legislature meant to include them within the term ''freeholders'' as used in the act.

(3) The notice to plaintiff is condemned by plaintiff's counsel as insufficient in statement and in time. It is as follows:

''STATE OF WEST VIRGINIA—DEPARTMENT OF AGRICULTURE, CHARLESTON
NOTICE TO DESTROY CEDAR TREES
No. 16             Date January 26th, 1929.
To Sue M. Lemon,
    Shepherdstown, W. Va., ......................P. O.
You are hereby notified that an examination and investigation of your premises, located in Shepherdstown........District........Jefferson County, W. Va. was made by Arthur A. Gold Asst., State Entomologist, on January 26, 1929, as provided by the Acts of West Virginia Legislature, 1925. It was found that there are Cedar Trees on your said premises and that said cedar trees harbor a disease known as Cedar Rust. Further investigation and examination of the locality showed that said Cedar Trees are within a radius of three miles of Apple Orchards, to-wit, Goldsborough and

others..............and that said cedar trees consti-
tute a menace to said Apple Orchards, and it is
deemed necessary for said cedar trees to be de-
stroyed. You are, therefore, further notified, in
accordance with the aforesaid Acts of the West
Virginia Legislature of 1925, to cut down and de-
stroy the said Cedar Trees on your premises within
5 Days from the receipt of this notice.
                (Signed) ARTHUR A. GOLD,
            Arthur A. Gold, Asst. State Entomologist.''

This notice is not as carefully drawn as it might have been.
It did appraise the plaintiff, however, that an official exami-
nation of her property had been made; that cedar trees in-
fested with the cedar rust had been found thereon; and that
the trees were within a radius of three miles of the apple
orchards of Goldsborough and others and constituted a men-
ace thereto. The notice also called plaintiff's attention to the
law under which the officer was proceeding and directed her
to destroy the trees. The evidence shows that the disease in
question is called both ''cedar rust'' and ''apple rust''. There
is no claim that plaintiff was misled by the reference to
''cedar rust''. We are therefore of opinion that the notice
substantially complied with the statute.

The evidence does not show whether plaintiff could have
cut the trees in the period fixed by the notice. It would be
unusual, indeed, for one not in the timber business to have
at hand woodsmen enough to cut five hundred cedars within
five days. She made no attempt, however, to comply with
the notice or to secure an extension of time. So the conten-
tion that the period allowed was insufficient is also without
merit.

Maryland has no enactment similar to the one in question.
The Maryland boundary line is within a mile of plaintiff's
property. There are red cedars growing just across that
line. Plaintiff finally contends that the destruction of her
cedars will not prevent apple rust in her locality as the dis-
ease will be spread from the Maryland cedars. The destruc-
tion of her trees, however, removes one source of infection.
And it is an accepted principle that the existence of a nui-

sance may not be justified by the fact that there are other similar nuisances in the vicinity. 20 R. C. L., p. 492, sec. 106. *Davis* v. *Spragg*, 72 W. Va. 672.

· The decree of the circuit court is affirmed.

*Affirmed.*