## UPTON et al. v. FELTON et al.

District Court, D. Nebraska, Lincoln Division.
Dec. 30, 1932.

D. O. Dwyer, W. L. Dwyer, and Dwyer & Dwyer, all of Plattsmouth, Neb., for complainants.

C. A. Sorensen, Atty. Gen., and L. R. Newkirk, Asst. Atty. Gen., for defendants.

Before KENYON and GARDNER, Circuit Judges, and MUNGER, District Judge.

KENYON, Circuit Judge.

This case involves the constitutionality of what is known as the "Cedar Rust Law" of Nebraska passed in 1929 (chapter 2), and amended in 1931 (chapter 1). The material part of the law in question reads as follows: "Any red cedar tree or trees which are or may be ascertained to be the source, harbor or host plant for the communicable plant disease commonly known as 'orange' or 'cedar rust' of the apple when growing within a radius of two miles of any apple orchard now growing in this State, containing 1,000 or more apple trees, are hereby declared a public nuisance and it shall be the duty of the owner or owners of any such cedar trees to destroy the same as soon as they are directed to do so by the Department of Agriculture as hereinafter provided." Laws Neb. 1929, c. 2, § 2, as amended by Laws 1931, c. 1, § 1.

Under this act the department of agriculture of the state of Nebraska was about to cut down and destroy valuable red cedar trees growing upon the properties of the seventeen landowners, who are plaintiffs.

The suit is to enjoin them from cutting said trees. Considerable evidence was introduced at the hearing, but in fact there is very

little dispute concerning the evidence. All the plaintiffs have less than 600 cedar trees on their properties, they being within two miles of one or more apple orchards of 1,000 or more trees. These cedar trees all have the disease known as the "cedar rust" of the apple. The evidence shows that in about six of the counties of Southeastern Nebraska some 600,000 bushels of apples were marketed during the year 1931 at the price of $1 a bushel, and that that part of Nebraska is a good location for apple growing for commercial purposes.

The red cedars growing on the premises of the plaintiffs were valuable, not only for ornamental purposes, but for protection from winds and snows. The cedars themselves are of small value, but there was evidence that the destruction thereof would greatly depreciate the value of plaintiffs' farms.

One of the witnesses who was not a party to this suit had some 350 cedar trees, which is the highest number of any individual ownership. The witness testified that these trees were planted many years ago under the inspiration of J. Sterling Morton, and that there is a great deal of sentimental value to them as a part of the old-fashioned homesteads, and indeed the pictures presented to us show that these cedar trees are very ornamental, and undoubtedly would affect the value of the farm upon the market.

The constitutionality of the act is attacked on a number of grounds, principally that it is a taking of valuable property rights without due process of law; that it is a taking for the benefit of a special class, and that the classification is arbitrary and unjust; that it is special legislation in favor of a class, that is, the owners of apple orchards of 1,000 or more trees; that it is a taking of property rights without compensation; that it provides for the taxing of plaintiffs with the costs of cutting down and destruction of their property, contrary to article 8, § 1, of the Constitution of Nebraska, which guarantees a uniform tax assessment to the citizens of the state; that it is a violation of section 25, article 1, of the Constitution of the state of Nebraska.

Therefore it appears that the statute is attacked, not only as a violation of the federal Constitution, but likewise of the Constitution of the state of Nebraska.

The ultimate question as to the federal Constitution is whether the Legislature has gone beyond its constitutional power. The act if sustained must be on the theory that it is a proper exercise of police power.

While the Supreme Court has said, as in Hadacheck v. Sebastian, etc., 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927, that there is scarcely any limitation upon the police power when it is not exerted arbitrarily, yet Justice Holmes, in Pennsylvania Coal Co. v. Mahon et al., 260 U. S. 393, 413, 43 S. Ct. 158, 159, 67 L. Ed. 322, 28 A. L. R. 1321, has sounded a note of warning against the extension of the police power to such a point as to destroy the contract and due process clauses of the federal Constitution, saying: "But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power."

Has the police power of the state of Nebraska been exercised under this statute so arbitrarily that a court may say the statute is unconstitutional?

A number of the states have these cedar rust laws, and they have received considerable attention from the courts. Virginia and West Virginia are the main ones.

The first case seems to be Bowman v. Virginia State Entomologist, 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121. There the Supreme Court held that the cedar rust law providing for the destruction of these trees to prevent infection of adjacent apple orchards was valid under the police power of the state for the protection of the public interest, and was a valid exercise of such power, though it did not allow compensation to the owners of destroyed trees as a matter of right; that the state was not limited to dealing with what would be nuisances at common law; and that the State Legislature had a right to declare cedar trees a nuisance.

Kelleher v. Schoene, State Entomologist (D. C. W. D. Va.) 14 F. (2d) 341, dealt with the Virginia cedar rust law. It was a three-judge case, where the plaintiff sought to have the state entomologist enjoined from enforcing such law. The three-judge court held that the Virginia cedar rust law was not unconstitutional as denying the equal protection of the laws because of its effect to benefit one class of property owners at the expense of

another. Kelleher v. French, State Entomologist (D. C. W. D. Va.) 22 F.(2d) 341 (affirmed Kelleher v. French, 278 U. S. 563, 49 S. Ct. 35, 73 L. Ed. 507), was another similar case where the court held that the cedar rust law of Virginia authorizing destruction of host plants for cedar rust did not deny due process and equal protection. The Virginia law is slightly different from the Nebraska law. The Virginia act reached the Supreme Court of the United States in Miller et al. v. Schoene, 276 U. S. 272, 48 S. Ct. 246, 72 L. Ed. 568, and it was held that the act was consistent with the due process clause of the Fourteenth Amendment. The court construes the proposition under the evidence (which is also here) that the state was under the necessity of making a choice between the preservation of one class of property and that of the other wherever both existed in dangerous proximity, and said at pages 279, 280 of 276 U. S., 48 S. Ct. 246, 247, 72 L. Ed. 568: "When forced to such a choice the state does not exceed its constitutional powers by deciding upon the destruction of one class of property in order to save another which in the judgment of the legislature, is of greater value to the public. It will not do to say that the case is merely one of a conflict of two private interests and that the misfortune of apple growers may not be shifted to cedar owners by ordering the destruction of their property; for it is obvious that there may be, and that here there is, a preponderant public concern in the preservation of the one interest over the other. * * * And where the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property." And the court said that the state was not compelled to consider the question of whether the infected cedars were a nuisance according to the common law, but that the state in making the choice as to which property should be destroyed was exercising a power which the state possessed, and "we cannot say that its exercise, controlled by considerations of social policy which are not unreasonable, involves any denial of due process."

The same argument was made in Miller v. Schoene, supra, that is made in this case, namely, that there is a taking of the property without process of law.

Counsel for complainants do not distinguish between the doctrine so often declared by the courts that in the valid exercise of police power private property may be destroyed, and that this is not the same as a taking of the property for public use, which requires compensation.

In Mugler v. Kansas, 123 U. S. 623, at page 669, 8 S. Ct. 273, 301, 31 L. Ed. 205, it is said by Mr. Justice Harlan: "The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner." In Bowman v. Virginia State Entomologist, supra, 128 Va. 351, at page 145 of 105 S. E., 12 A. L. R. 1121, the court quotes Lewis on Eminent Domain (3d Ed.) § 247, to the effect that: "To destroy property because it is a public nuisance is not to appropriate it to public use, but to prevent any use of it by the owner, and to put an end to its existence, because it could not be used consistently with the maxim, sic utere tuo ut alienum non lædas."

It seems clear from these various opinions and others that might be cited that the exercise of the power to destroy private property as a nuisance is not confined to forms of property that were nuisances per se at common law. Miller v. Schoene, supra; Village of Euclid et al. v. Ambler, etc., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Bowman v. State Entomologist, supra. The state in these matters is not taking the property of the owner for a public or private use. It is abating a nuisance and requiring the owner to use his property so as not to injure another.

In Balch v. Glenn et al., 85 Kan. 735, 119 P. 67, 43 L. R. A. (N. S.) 1080, Ann. Cas. 1913A, 406, upholding a Kansas statute providing for the extermination of San Jose scale and other orchard pests at the owners' expense, it is said at page 71 of 119 P., 85 Kan. 735: "It rests wholly with the Legislature to determine whether in the exercise of its power of police regulation the individual whose property is destroyed shall receive compensation therefor. In the statute of which appellant complains no such provision appears."

In State v. Main, 69 Conn. 123, 37 A. 80, 36 L. R. A. 623, 61 Am. St. Rep. 30, where the trees in question were infected with a disease known as the "yellows," it is said at page 84 of 37 A., 69 Conn. 123: "The destruction of a tree affected by a disease of that character, without compensation to the owner, and

against his will, is as fully within the police power of a state as the destruction of a house threatened by a spreading conflagration, or the clothes of a person who has fallen a victim to smallpox. Such property is not taken for public use. It is destroyed because, in the judgment of those to whom the law has confided the power of decision, it is of no use, and is a source of public danger."

In Louisiana State Board of Agriculture and Immigration v. Tanzmann, 140 La. 756, 73 So. 854, L. R. A. 1917C, 894, Ann. Cas. 1917E, 217, where trees affected with certain citrous diseases had been ordered destroyed, the court said, at pages 856, 857 of 73 So., 140 La. 756: "Equally without merit is the attack as based upon the grounds that the act contemplates the taking of private property without due process of law and without compensation previously made. The case is well within the doctrine recognized by this court in City of New Orleans v. Charouleau, 121 La. 890, 46 So. 911, 18 L. R. A. (N. S.) 368, 126 Am. St. Rep. 332, 15 Ann. Cas. 46, in which it was held competent for the state, in the exercise of its police power, to authorize the city council to require cows to be inspected, and, if found tuberculous, to be destroyed, without compensation to the owner."

Nor does the fact that particular apple orchardists may be the immediate beneficiaries of the destruction of plaintiffs' trees render such destruction a taking for a private use, not justifiable even with compensation. As is said in Colvill v. Fox, 51 Mont. 72, 149 P. 496, at page 498, L. R. A. 1915F, 894:

"The mere fact that other orchardists may profit by the destruction of this menace to their fruit and trees does not convert the act of destruction from its character as one for the public welfare into one for the private use or benefit of such people. * * *

"In the destruction of private dwellings to stop the spread of a fire, or of animals affected with a contagious disease to protect the live stock industry, private interests are served as an incident to the public benefit reaped, but the dwellings in the one instance, or the animals in the other, are not subjected to the private use of the more fortunate owners who are saved from the effects of the conflagration or plague."

█ The Nebraska law here in question is in no way lacking in due process through its failure to provide specifically for machinery to test its own validity and the validity of action taken under it. The language of the West Virginia court in Lemon v. Rumsey, State Entomologist et al., 108 W. Va. 242, 150

S. E. 725, 726, is applicable here also. The court there said: "The Virginia act provides for an appeal to the circuit court by the landowner from the order of the state entomologist requiring the destruction of cedar trees. The West Virginia statute has no such provision. Counsel for plaintiff contend that lack of such a provision clearly differentiates our statute from that of Virginia, and deprives a landowner of his property without a judicial hearing. Counsel overlook a fact which our Legislature undoubtedly had in mind, that courts of equity are always open to prevent an unwarranted invasion of property rights, such as might arise under this act. Witness this very proceeding. Why, then, provide a forum, when one already exists? The Virginia statute gives the circuit court authority 'to pass upon all questions involved,' and to determine the amount of damages incurred by the landowner. A court of equity has the inherent authority to pass on all the questions involved in such cases, except that of damages. Our act provides a method by which an owner may secure compensation after the destruction of his trees. Besides, it is generally established that a state may authorize the summary abatement of a nuisance without judicial process or proceeding. This power was recognized at common law. 20 R. C. L. p. 487, § 100; 46 C. J., p. 755, § 357. 'The destruction of the infected trees by order of a public official, after due inspection, is a remedy which, however severe, is one appropriate to the end in view, and may properly be enforced without any preliminary judicial inquiry.' State v. Main, 69 Conn. 123, 137, 37 A. 80, 84, 36 L. R. A. 623, 61 Am. St. Rep. 30. Consequently due process of law is not denied by our act."

█ The remaining contention of plaintiffs under the federal Constitution is that the Nebraska law denies to plaintiffs the equal protection of the laws. It can well be, of course, that legislation directed at a perfectly legitimate end is nevertheless invalid as unreasonably discriminatory in its application. The mode can well be the measure of the power.

The Nebraska law obviously singles out, for its immediate benefit, orchards of 1,000 or more trees, and, conversely, for its burden, owners of cedar trees growing within two miles of such orchards. The Virginia statute, on the other hand, was directed at all cedar trees growing within two miles of any apple orchards, of whatever size.

But classification, or failure to make a statute all-inclusive, is not in itself a denial of equal protection. In Whitney v. Califor-

nia, 274 U. S. 357, at page 369, 47 S. Ct. 641, 646, 71 L. Ed. 1095, it is said: "It is settled by repeated decisions of this Court that the equal protection clause does not take from a State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary; and that one who assails the classification must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." In Zucht v. King et al., 260 U. S. 174, at pages 176, 177, 43 S. Ct. 24, 25, 67 L. Ed. 194, it is pointed out that: "A long line of decisions by this court had also settled that in the exercise of the police power reasonable classification may be freely applied, and that regulation is not violative of the equal protection clause merely because it is not all-embracing. Adams v. Milwaukee, 228 U. S. 572, 33 S. Ct. 610, 57 L. Ed. 971; Miller v. Wilson, 236 U. S. 373, 384, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829." In Lemon v. Rumsey, State Entomologist et al., supra, 108 W. Va. 242, at page 728 of 150 S. E., it is said: "And it is an accepted principle that the existence of a nuisance may not be justified by the fact that there are other similar nuisances in the vicinity." And in Crescent Cotton Oil Company v. State of Mississippi, 257 U. S. 129, at page 137, 42 S. Ct. 42, 44, 66 L. Ed. 166, it is said: "It is clearly settled that any classification adopted by a state in the exercise of this power which has a reasonable basis, and is therefore not arbitrary, will be sustained against an attack based upon the equal protection of the laws clause of the Fourteenth Amendment, and also that every state of facts sufficient to sustain such classification which can be reasonably conceived of as having existed when the law was enacted will be assumed. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160, and cases cited; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455."

For further illustrations of the statement and application of the same propositions, see, also, Fort Smith Light & Traction Co. v. Board of Improvement of Paving District No. 16 of the City of Fort Smith, 274 U. S. 387, 391, 47 S. Ct. 595, 71 L. Ed. 1112; Masonic Cemetery Ass'n et al. v. Gamage et al. (C. C. A. 9) 38 F.(2d) 950, 955, 956, 71 A. L. R. 1027, certiorari denied, Gamage et al. v. Masonic Cemetery Ass'n et al., 282 U. S. 852, 51 S. Ct. 30, 75 L. Ed. 755.

In Village of Euclid et al. v. Ambler Realty Company, supra, at page 388 of 272 U. S., 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016, it is said: "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Radice v. New York, 264 U. S. 292, 294, 44 S. Ct. 325, 68 L. Ed. 690." But whatever the purpose of the classification, so long as it is a purpose to which the police power may legitimately extend, the same statement applies with equal force. As defendants point out, we have in the instant case something in the nature of rural zoning.

We are of the opinion the classification made by the Nebraska statute must thus be held to be valid. In selecting a two-mile radius from apple orchards as the area of destruction, the Legislature clearly acted upon a sufficient basis of scientific fact. In the Virginia cedar rust statute the radius provided was the same; in the West Virginia statute it was three miles. As stated by Mr. Justice Stone in Miller et al. v. Schoene, supra, at pages 278, 279 of 276 U. S., 48 S. Ct. 246, 247, 72 L. Ed. 568, the life cycle of the "cedar rust" disease "has two phases which are passed alternately as a growth on red cedar and on apple trees. It is communicated by spores from one to the other over a radius of at least two miles. ⁂ ⁂ ⁂ The only practicable method of controlling the disease and protecting apple trees from its ravages is the destruction of all red cedar trees, subject to the infection, located within two miles of apple orchards."

There was thus no denial of equal protection as between owners of cedars growing within two miles of apple orchards, and owners of cedars growing outside that radius. The line had to be fixed at a distance that would approximate the outside limits for the communication of the disease; and this is what was done.

Plaintiffs are, of course, unable to avail themselves directly of any discrimination the statute may contain as between the orchard owners; that is, as between owners of orchards containing more than 1,000 trees, and owners of orchards containing less than 1,000 trees. Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 55, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495; Cusack Co. v. City of Chicago, 242 U. S. 526, 530, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594; Plymouth Coal Co. v. Commonwealth of Pennsylvania, 232 U. S. 531, 34 S. Ct. 359, 58 L. Ed. 713; Herbring v. Lee, Insurance Commissioner of Oregon, 280 U. S.

111, 117, 50 S. Ct. 49, 74 L. Ed. 217, 64 A. L. R. 1430. But a discrimination as between the orchard owners with respect to the benefit of the statute may well constitute indirectly a discrimination as between the owners of the cedar trees with respect to the burden of the statute; that is, a discrimination as between owners of cedar trees growing within two miles of apple orchards containing 1,000 or more trees, and owners of cedar trees growing within two miles of apple orchards containing less than 1,000 trees. And the reasonableness, and consequent validity, of the statute with respect to the discrimination, or classification, it thus indirectly brings about as between owners of cedar trees, will depend upon its reasonableness with respect to the discrimination, or classification, it directly provides as between orchard owners.

Considering the statute in this light, we are unable to say that the Legislature had no reasonable and sufficient basis for centering upon orchards of 1,000 or more trees as constituting the state's interest in commercial apple growing, which it was the purpose of the statute to protect and foster. The Legislature evidently felt that this interest of the state was not sufficient to justify the extermination of all cedars growing within two miles of any orchard; and in enacting a statute less drastic than the Virginia statute upheld in the cases cited, supra, it had to draw the line somewhere. We cannot say that it acted arbitrarily in drawing the line at the point it did.

It was stated by Mr. Chief Justice Hughes in Sproles et al. v. Binford, 286 U. S. 374, at pages 388, 389, 52 S. Ct. 581, 585, 76 L. Ed. 1167, at page 1179: "In exercising its authority over its highways the state is not limited to the raising of revenue for maintenance and reconstruction, or to regulations as to the manner in which vehicles shall be operated, but the state may also prevent the wear and hazards due to excessive size of vehicles and weight of load. Limitations of size and weight are manifestly subjects within the broad range of legislative discretion. To make scientific precision a criterion of constitutional power would be to subject the state to an intolerable supervision hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure. Ohio Oil Co. v. Conway, 281 U. S. 146, 159, 74 L. Ed. 775, 781, 50 S. Ct. 310. When the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome."

In the above case the Supreme Court upheld a Texas statute limiting to 7,000 pounds the load that could legally be carried by a truck operating on the public highways of the state.

The same reasoning would seem to be determinative of the instant case. Surely the Nebraska Legislature was not required either to enact an all-embracing statute of the Virginia type or else not legislate upon the subject at all. Plaintiffs point out in their reply brief that conditions are not altogether the same in Nebraska as in Virginia; yet their interpretation of the equal protection clause would deny to the Legislature of Nebraska the power to recognize this difference in conditions and legislate appropriately to the conditions it should find to exist in Nebraska. We think the Legislature has attempted to draw a balance between the interest of the state in commercial apple growing and the interest of the owners of cedars in the protection from sun and storm those cedars provide, and we cannot say that it acted arbitrarily or unreasonably or without sufficient basis in fact in fixing upon orchards of 1,000 or more trees as the extent of the state's interest in commercial apple growing to protect which it was willing to sacrifice the private interest of the owners of growing cedars. So long as the Legislature had the power to draw the line somewhere, we should be unwilling to substitute our judgment as to where that line should have been drawn (assuming we had before us adequate data on which to decide that question, which we do not) for the judgment of the body in whose hands the power primarily rests.

Plaintiffs' reply contains arguments which would have been forceful if addressed to the Legislature, but which are beside the point when addressed to a court of law. It would seem that the Nebraska statute in question is a denial neither of due process of law nor of the equal protection of the laws, and is not such a taking as requires compensation. It is therefore immune from attack under the Federal Constitution.

■■ Plaintiffs urge also that the statute is void under the Nebraska Constitution, art. 3, § 18, in that it is a special law where a general law would have sufficed, and in that, by a subsequent section which assesses against the owners of cedars the cost of their destruction, it is a tax which does not bear equally.

As to the first objection, the answer is that the statute applies to all who come within the class it delimits, and is no more special than the statute common to Nebraska and most other states which divides the cities of the state into classes in accordance with population and legislates appropriately to the needs of each class. As to the second objection, the answer is that the burden imposed by the statute is in no sense a tax. As is said in 26 R. C. L. §§ 9, 10, pp. 23–25:

"It is well settled that when an owner of land suffers it to fall into such a condition that it endangers the health and safety of the community and thereby constitutes a public nuisance the state may, in the exercise of the police power, compel him to abate the nuisance at his own expense, or may require him to make such improvements as may be required to protect the public health, safety or welfare. As an incident to this power and as a convenient means of putting it to practical accomplishment, if the owner declines to abate the nuisance the state may do the work itself and recover the cost from the owner, and as a means of collecting the cost may make it a lien on the land and enforce the lien in the same manner as liens for taxes are enforced. Such a charge is not, however, a tax, and is not subject to the constitutional limitations upon the power of taxation. * * *

"It is generally held that the owners or occupants of premises abutting upon public highways in cities and large towns may be required to remove the snow from the sidewalks in front of their respective premises at their own expense, or to cause the streets in front of their premises to be swept, or even to construct and keep in repair the sidewalks in front of their premises, but such a requirement is not a tax, but is a regulation of public burdens under the police power and is perhaps best classified as one of the many instances in which established custom and general convenience justify the infliction of a trivial burden regardless of the strict letter of the constitution."

Statutes have frequently been upheld which require railroad companies at their own expense to destroy weeds and other forms of noxious vegetation growing along their right of way. Chicago, Terre Haute & Southeastern Ry. Co. v. Anderson, 242 U. S. 283, 37 S. Ct. 124, 61 L. Ed. 302; Missouri, Kansas & Texas Ry. Co. of Texas v. May, 194 U. S. 267, 24 S. Ct. 638, 48 L. Ed. 971; People v. Chicago, M. & St. P. Ry. Co., 319 Ill. 241, 149 N. E. 778. In Horbach v. City of Omaha et al., 54 Neb. 83, 74 N. W. 434, at page 435,

with reference to a statute charging to the owner the cost of filling lots to obviate nuisance conditions, the Nebraska court said: "The charge authorized by the section to defray the expense of draining, filling, or grading lots, the condition of which amounts to a nuisance, is not a tax or assessment at all, within the meaning of those terms as they are used in the constitution. The abatement of nuisances, menacing the public health or safety, is the main purpose of the law, and its enactment was a warranted exercise of the police power of the state."

Public improvements that have no necessary relation to the police power of the state, and which can be undertaken independent of the existence of nuisance or near-nuisance conditions, such as, for example, a comprehensive system for the drainage of agricultural lands, are to be distinguished from what was sought to be accomplished by the statute in the instant case. Cases holding that such improvements can be paid for only out of public funds raised by the general tax or by a special assessment for benefit have no bearing here.

We conclude that the injunction asked by plaintiffs should be denied and their bill dismissed. It is so ordered.