Dear Sheriff Hingle,
You have requested an opinion of this office regarding the use public funds to purchase and apply insecticides on all citrus trees throughout Plaquemines Parish in an attempt to prevent the onset or spread of the citrus greening disease. The citrus greening disease, also called Huanglongbing, slowly distorts and discolors the leaves, renders the fruit inedible, and eventually kills the trees. The disease is transmitted through an insect, the Asian Citrus Psyllid, which was recently discovered in citrus groves in Plaquemines Parish.
If greening occurs, the U.S. Department of Agriculture's Animal and Plant Health Inspection Service will issue a quarantine of Plaquemines Parish. Under this quarantine, the parish will be restricted from movement of all its citrus products to ensure that the citrus greening disease does not spread to citrus crops in other parishes or states. According to your request and a subsequent telephone conversation, such a quarantine would be devastating to the economy of Plaquemines Parish as the citrus industry generates approximately 1 to 1.5 million dollars in tax revenues annually and an additional half million dollars annually in tourism and marketing. Because greening renders the fruit inedible and eventually kills the tree, the revenue generated from citrus sales could be lost for several years if no action is promptly taken.
In an effort to prevent quarantine and the spread of citrus greening disease, the Plaquemines Parish Government, in a joint effort with the Plaquemines Parish Sheriff's Office, is seeking to purchase and apply the required insecticides on all citrus trees throughout Plaquemines Parish. Therefore, you seek an opinion of this office on whether the use of public funds on private property is permissible for such an endeavor. *Page 2 
As you are aware, Art. VII, Sec. 14(A) of the Louisiana Constitution prohibits the donation, loan, or pledge of public funds to or for any person, association, or corporation, public or private. Recently, inBoard of Directors of the Industrial Development Board of the City ofGonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens ofthe City of Gonzales, 938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the"Cabela's" case), the Louisiana Supreme Court announced a new standard for determining when Art. VII, Sec. 14 has been violated. The Court found that "(Art VII) § 14(A) is violated when public funds or property are gratuitously alienated."
We glean three things from the Cabela's case when it comes to determining whether an expenditure is gratuitous. First, it is evident that there must be a public purpose when expending funds. Second, the transaction must be looked at as a whole, and can't appear to be gratuitous on its face. Third, public entities must have an expectation of receiving something of value when expending public funds. TheCabela's decision doesn't make it clear exactly what that value is or how it is calculated. In Cabela's, the non-gratuitous intent of the public entities was demonstrated upon a showing by the entities that they expected to receive more than what they gave up. While the Court didn't state that such a showing was necessary, it did make it clear that such a showing was an important factor in its decision. Therefore, it is clear to our office that a public entity must receive more than a nominal return or some minimal value in order for an expenditure to be non-gratuitous. If a public entity can show that it reasonably expects to receive at least equivalent value for the funds it expends or property it transfers, that would seem to show a non-gratuitous intent. Atty. Gen. Op. No. 07-0134.
Based upon the foregoing, it is the opinion of our office that in order for an expenditure or transfer of public funds or property to comply with Art. VII, Sec. 14(A), the public entity must show: (i) a public purpose for the expenditure or transfer; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) evidence demonstrating that the public entity has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred.
We will first address whether the purchase and application of the required insecticides on all citrus trees throughout Plaquemines Parish serves a public purpose. According to the Louisiana Department of Agriculture and Forestry, the citrus industry is a $6.1 million dollar a year industry in Louisiana. Because of the need to protect the state's agricultural interests from pests and diseases such as citrus greening, the legislature enacted La.R.S. 3:1652, which provides:
 The Department of Agriculture and Immigration shall have full and plenary power to deal with all crop and fruit pests and such *Page 3 
contagious and infectious crop and fruit diseases as in the opinion of the Entomologist, may be prevented, controlled, or eradicated; with full power to make, promulgate and enforce such rules, ordinances and regulations, and to do and perform such acts as, in the judgment of the entomologist, may be necessary to control, eradicate, or prevent the introduction, spread, or dissemination of all injurious crop and fruit pests and diseases. The rules, ordinances and regulations of the department shall have the force and effect of law five days after their promulgation in the official journal of the state. The department may prohibit or regulate the shipment or bringing into this State of any plants, farm products, or other articles of any nature or character whatsoever from any state, territory, or foreign country, when in the opinion of the entomologist the prohibition or regulation is necessary.
By permitting the Department of Agriculture to "perform any such acts" necessary to protect crops and fruits from pests and diseases, it seems clear that the use of public funds in doing so is permitted. The authority given to the state to deal with crop and fruit pests and diseases does not prevent local governments from also dealing with crop and fruit pests and diseases. Rather, it lends support to local entities being able to deal with fruit pests.
In Louisiana State Board of Agriculture and Immigration v. Tanzmann,73 So. 854 (La. 1917), the Louisiana Supreme Court was faced with the question of whether the Department of Agriculture had the authority to destroy orange trees on Mr. Tanzmann's property which were affected by an incurable disease, citrus canker. The Court found that is was a "competent exercise of the police power of the state," noting that, "The proposition that, though all the orange groves in the state may in the meanwhile be destroyed by citrus canker, the defendant should be allowed to maintain that disease in his grove, on the chance that he may discover, and until he does discover, a remedy for it which may be less drastic than the burning of trees, is untenable. The owners of the othergroves are entitled to protection now before the destruction emanatingfrom defendant's property overtakes their groves." Tanzmann, 73 So. at, 854, 857 (emphasis added). The use of public funds to spray for and eradicate the Asian Citrus Psyllid promotes the safety and general welfare of the people by ensuring that disease-free fruit is produced and shipped and that the disease is not spread to citrus groves in neighboring parishes or states.
In addition to being for a public purpose, which we have here, expenditures of public funds cannot appear to be gratuitous and the public entity must have a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred. These requirements are met as spending public funds to purchase and apply the required insecticides on citrus trees to *Page 4 
protect them from the Asian citrus psyllid and greening protects and preserves the citrus industry in Plaquemines Parish and prevents the disease from spreading from Plaquemines Parish to other parishes. In addition, protecting the citrus industry will result in the continued collection by the Parish of over a million dollars in tax revenues annually and an additional half million dollars in tourism and marketing annually. If the trees are not sprayed and citrus greening occurs, the citrus crops and trees will be lost for years, resulting in millions of dollars worth of losses for Plaquemines Parish. Failure to protect the agricultural interest in citrus trees could be devastating for the local and state economies.
Accordingly, it is the opinion of this office that using public funds to purchase and apply the required insecticides on all citrus trees throughout Plaquemines Parish to protect the citrus trees from the Asian citrus psyllid and greening is not a violation of La.Const. art. VII, Sec. 14(A).
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 JDC/ls